# STATE v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

### July 16, 1915.

### Nos. 19,328—(20).

**Gross earnings tax.**

1. Where two carriers enter into an arrangement by which one becomes practically the hiring and disbursing agent of the other in the performance of duties partly owing by both, paying out for and receiving back from the other only the actual cost of the service, with no intention of gaining revenue or making a profit out of the transaction, *held* that, where such arrangement is made in good faith and not in fraud, subterfuge or evasion of the obligations of either party to the state or to the public, such moneys are not subject to the gross earnings tax.

**Same — double taxation.**

2. Where such services are included in the freight charges of the other railway companies, which pay a gross earnings tax thereon, *held* that to compel defendant to pay a tax on these same receipts would be in the nature of double taxation, exacting the commutation taxes on the same property twice, which cannot lawfully be done.

**Same.**

3. Defendant and certain navigation companies agreed that defendant should employ stevedores to perform certain work, part of which it was the duty of defendant to perform, the navigation companies paying to defendant the actual cost of the labor. Defendant, in hiring the men to do the work, really acted for the boat companies as hiring and disbursing agent, paying for the actual cost of the work, making no profit and receiving back from the boat companies only what it expended. *Held* that, in the absence of fraud, subterfuge or evasion of the obligations of either party to the state or to the public, moneys received from such boat companies under such circumstances are not subject to the gross earnings tax.

[1] Reported in 153 N. W. 850.

Action in the district court for Ramsey county to recover $39,862 as a tax upon defendant's incorporated gross earnings during each of the years 1899–1911 inclusive. The case was tried upon stipulated facts before Dickson, J., who made findings and ordered judgment in favor of defendant. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Lyndon A. Smith,* Attorney General, and *William A. Stevenson,* Assistant Attorney General, for appellant.

*Emerson Hadley,* for respondent.

SCHALLER, J.

This is an appeal from the judgment for defendant entered in the district court of Ramsey county, Minnesota, in an action brought by the state to enforce a claim against the defendant for gross earnings taxes on two omitted items.

Defendant is a common carrier operating lines of railroad in this state.

From the year 1899 to 1911, inclusive, defendant as such common carrier operated certain freight warehouses at Minneapolis and Duluth on its line of railway, using them for the purpose of receiving and transferring to cars freight for shipment, for temporarily storing freight and for receiving freight from its cars for delivery to consignees or connecting carriers. Certain other railway companies, having lines of railway running into said two cities, did not have freight house facilities at such points, and during said years the freight of such other railway companies was handled at the freight houses of the defendant and by the employees and agents of the defendant, said agents and employees assuming to deal and treat with shippers as agents and employees of the said other railway companies. During said time such railway companies have paid to defendant as compensation for the use of its freight warehouses and the services of its employees, in performing such services a certain flat rate per ton for the freight so handled. Defendant's employees in performing the services and in billing and collecting charges as between themselves and the public acted as the agents of such other

companies. They reported and accounted directly to such other com-
panies in all such matters, but were paid wages by defendant only.

The flat rate per ton received by defendant represented as nearly
as possible the actual cost of the services performed, and was agreed
upon for convenience and ease of accounting.

The sums received as aforesaid were all received for handling
freight in the course of and as an incident to transportation by the
other railway companies; the other companies received for such
transportation, including the said services performed by defendant,
their lawful published tariff rates, and all the freight charges so re-
ceived by said other companies (except the Duluth, South Shore &
Atlantic Railway Co.), were duly returned by them to the state
of Minnesota as a part of their gross earnings and taxes thereon were
duly assessed and paid.

The defendant during all of said times performed services for the
said Duluth, South Shore & Atlantic Railway Co. in hauling its
freight trains and cars over defendant's lines and in switching cars
for said company. Defendant's earnings in Minnesota for such
services were duly returned by defendant and taxes paid thereon.

During the years 1904 to 1911, inclusive, the defendant owned
certain warehouses at Duluth, located on its line and used in its
railroad business. The warehouses were situated on wharves or
piers and were so arranged that defendant's cars could be loaded or
unloaded on one side of the warehouse and freight boats plying to
and from the port of Duluth could be loaded or unloaded on the
other side. Freight can be transferred through the warehouses from
the cars to the boats and from the boats to the cars. It is sometimes
temporarily stored in such warehouses.

During the times mentioned it was the duty of the companies op-
erating the boats, as part of the transportation thereof by them, to
unload the in-bound freight from the hold of its boats and put it
into such warehouses and to load the out-bound freight into such
vessels from such warehouses. Defendant's duty was to unload
lake-bound freight from its cars into the warehouses and to load
from such warehouses into cars all freight from such boats for
points on its lines of railway. By arrangement with the boat com-

panies the defendant employed stevedores to perform all the manual labor of handling all of said freight, the vessels furnishing the mechanical power for hoisting from and lowering freight into the holds of the vessels. Under the agreement the boat lines paid to the defendant a certain flat rate per ton for all freight handled in delivering said freight to and from the dock. This flat rate per ton was, as nearly as could be determined by long experience, the actual cost of handling this freight from the vessels to the warehouse and from the warehouse to the vessels.

The defendant did not, during the years aforesaid or at any other time, return the amounts received from said boat lines as aforesaid as a part of its gross earnings to the state of Minnesota for taxation.

It appears that there are two kinds of income upon which taxes are demanded:

A. Moneys received by defendant for the handling of freight into, through and out of its warehouses or freight depots at Minneapolis and Duluth. This work was done for other railway companies, who included the services performed by the defendant in their transportation charges and paid taxes thereon.

B. Moneys received by defendant from boat companies for handling freight to and from lake carriers into and out of the defendant's freight warehouse at docks or piers at Duluth.

1. The state contends that the moneys received by defendant for handling freight of other roads through its warehouses represent earnings derived from operation. Defendant asserts that such is not the case; that the services rendered are rendered by its agents as the agents for the other lines; that the moneys by it received represent the actual cost of the service rendered and no more and that in effect it is merely the hiring and disbursing agent for the other roads.

Not all the income of a railway company operating in this state is subject to the gross earnings tax. State v. St. Paul, M. & M. Ry. Co. 30 Minn. 311, 15 N. W. 307; State v. Minnesota & I. Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426.

So where two carriers enter into an arrangement by which one becomes merely the hiring and disbursing agent for the other in the

performance of duties partly owing by both, paying out for and receiving back from the other only the actual cost of the service, without any intention to gain revenue or make a profit out of the transaction, and where such arrangement is made in good faith and not for the purpose of fraud, subterfuge or evasion of the obligations of either party to the state or to the public, such income will not be held subject to the gross earnings tax. It is within the spirit of the ruling in State v. Minnesota & I. Ry. Co. supra.

2. Defendant contends that, because these services are included in the freight charges of the other railway lines, upon which charges a gross earnings tax is paid, to compel it to pay a tax on these same receipts would be in the nature of double taxation, exacting the commutation taxes on the same property twice. This cannot be lawfully done.

It was held in State v. St. Paul, M. & M. Ry. Co. 30 Minn. 311, 15 N. W. 307 (Gilfillan, C. J.), that "exacting three per centum upon the rent paid the company, and also upon the receipts by the tenant earned by operating the railroad, would be, to the extent of the rent, in the nature of double taxation, or rather of exacting twice the commutation for taxes on the same property."

This case was followed by State v. Northern Pacific R. Co. 32 Minn. 294, 20 N. W. 234, in which the tenant company was held liable to pay the per centum upon the earnings of the line leased and operated by it.

In State v. St. Paul Union Depot Co. 42 Minn. 142, 43 N. W. 840, 6 L.R.A. 234, it is held that taxes paid by companies which own all the stock and use the terminal facilities constitute payment of taxes on property of the Union Depot Co., and this because any other holding would result in double taxation. The court, Mitchell, J., says:

"It is evident from this statement of facts that the sole and only function performed by the defendant corporation is to furnish, at cost, a Union Depot and terminal facilities for the common use of these different railway companies, and that the scheme of forming a corporation for that purpose, and issuing stock, is but a more convenient and economical method of holding the property and manag-

ing the business than it would be to hold and manage it as tenants in common. It is also apparent that what is charged the railway companies and received by the depot company for these terminal facilities is nothing more or less than a part of the expenses of the former in transacting their railway business, and that what are called the 'earnings' of the depot company are for services for which the railway companies charge their patrons, and are all included in the gross earnings of the companies, on which they pay a percentage to the state. To collect a percentage on these gross earnings, and also a percentage on the gross earnings of the depot company, would be *pro tanto* double taxation of the same thing. Or take another view of the case. The stock of the Union Depot Company represents and is the exact equivalent of all the property of that corporation. It is held by the railway companies, under legislative authority, for railroad uses, as fully as would be the depot itself if held by them as tenants in common. Hence payment of the required percentage on the gross earnings of the companies constitutes payment of taxes on this stock, and consequently on the property which it represents, and to tax the stock in the hands of the stockholders, and then tax the property which it represents against the corporation, would clearly be illegal or double taxation. The identity of the property taxed is not affected by the fact that in the one case the tax is paid by the stockholder and in the other by the corporation. The thing taxed is still the same. Commrs. of Rice Co. v. Citizens' Nat. Bank, 23 Minn. 280; Farrington v. Tennessee, 95 U. S. 679, 24 L. ed. 558. If, in the present case, the taxes already collected from the railway companies, and those now sought to be collected from the depot company, were both the ordinary form of taxation, the fact of double taxation would be very apparent; but it is none the less double because in both cases the taxes are in the commuted form. Neither has the claim of the state in this case any equities. If the railway companies had owned and used this depot as tenants in common, the percentage on their gross earnings payable to the state would have been the same as now, and yet that percentage would have paid the taxes on the depot the same as on any other property held and used by them for railway purposes. We cannot see what

difference it can make whether they hold the depot property as tenants in common, or put it in the name of a trustee to hold and manage for their common use, or, as in this case, organize a corporation for the same purpose, as a more economical and convenient method of holding the property, managing the business and apportioning the expenses among themselves. The state plants itself on the technical ground that defendant is a separate and independent legal entity, and that we have no right to consider the functions which it performs, or the relations which it bears to the railway companies who own its stock and use its depots. We think this is too narrow and technical a view of the case. When evasions have been resorted to by railway companies or others to escape taxation, we have unhesitatingly looked through the external form or dress to the substance of the transaction, and the same rule should be applied against the state. By receipt of the percentage on the gross earnings of all the railway companies which use the property of the depot company, and who own all its stock, the state has received its tax once upon all the corporate property of the defendant, and to tax it again by a tax against the depot company would be illegal double taxation."

This doctrine is adhered to in State v. Minnesota & I. Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426, and is the settled law in this state.

3. What has been said relative to moneys received by defendant for handling freight for other railway companies through its freight depots and warehouses applies with equal force to moneys received by it under its contract with the boat companies. The defendant, in hiring the men to do the work, really acted for the boat companies. It paid for the actual cost of the work, made no profit and received back from the boat companies only what it expended.

It merely undertook, for the convenience of all parties, to perform for the boat companies at actual cost a duty which the boat companies owed to shippers growing out of the operation, not of the railroad, but of the vessels. Defendant was really acting as the hiring and disbursing agent for that part of the work which it was the duty of the boat companies to perform, so that, in the absence of fraud, subterfuge or evasion of the obligations of the parties to the state or

to the public, as already stated, the moneys received in reimbursement for the actual cost of the work with no intention of making a profit are not subject to the gross earnings tax.   State v. Minnesota & I. Ry. Co. supra.

Judgment affirmed.