## STATE EX REL. BYERS-PRESTHOLDT MOTOR COMPANY, INC. v. MINNESOTA TAX COMMISSION.[1]

October 11, 1929.

No. 27,560.

[1]Reported in 227 N. W. 43.

*Todd, Fosnes & Green, Stinchfield, Mackall, Crounse & McNally* and *Perry R. Moore,* for relator.

*G. A. Youngquist,* Attorney General, and *James E. Markham,* Deputy Attorney General, for respondent.

HOLT, J.

Certiorari to review an order of the Minnesota tax commission denying relator's application for reduction of its personal property assessment.

Relator is an automobile dealer in St. Paul, Minnesota, and on May 1, 1928, returned for assessment 57 new and unused automobiles owned by it and kept in its place of business for sale, of the aggregate value of $65,361.86. These cars were assessed as the personal property of relator at 33 1/3 per cent of the true value, as directed by G. S. 1923 (1 Mason, 1927) § 2674(b). Subsequent to May 1 and during the year 1928, 54 of these cars were sold to various individuals for use upon our highways. As a car was sold and before it was delivered, relator paid the motor vehicle tax, and formally transferred the car as registered to the purchaser, who paid in addition to the agreed price of the car the motor vehicle tax so paid by relator. Relator's claim is that the application for a reduction or abatement of its ad valorem tax should have been granted in the amount occasioned by the inclusion therein of the said 54 cars thus sold. This claim is based upon two different constructions of the motor vehicle tax law, either of which, if correct, would result in a reversal of the order.

The pertinent portions of said § 2674, upon which the decision principally must depend, are:

"(b) Motor vehicles not subject to taxation as provided in the foregoing [part of this] section, but subject to taxation as personal property within the state of Minnesota, shall be assessed and valued at thirty-three and one-third per cent of the true and full value thereof * * *; provided, that if a person against whom any tax has been levied on the ad valorem basis because of any motor vehicle shall, during the calendar year for which such tax is levied, be also

taxed under the provisions of this act, then and in that event, upon proper showing, the Minnesota tax commission shall grant to the person against whom said ad valorem tax was levied, such reduction or abatement of assessed valuation or taxes as was occasioned by the so-called ad valorem tax imposed.

"(c) The owner of every motor vehicle, not exempted by section 2, or 14, shall, so long as it is subject to taxation within the state, list and register the same and pay the tax herein provided annually, provided, however, that any dealer in motor vehicles to whom dealer's plates shall have been issued as herein provided, shall, upon due application on the date set for the annual renewal of registration and payment of tax, be entitled to withhold the tax upon any motor vehicle held by him solely for the purpose of sale or demonstrating or both and upon which the tax as a user of the public highways, shall become due, until the motor vehicle shall be sold or let for hire to a person not such a dealer, or until used upon the public highways, but no longer than until October 1st, following, when the whole tax shall become immediately payable with all arrears."

Relator's first contention is that its 57 new and unused cars were never subject to an ad valorem tax but came under subd. (c) above quoted. We think this is wrong. This law was enacted to carry out the power granted by art. 16, § 3, of the constitution placing a more onerous burden of taxation upon "motor vehicles using the public streets and highways" than might otherwise be placed upon such or other personal property. And should the state have attempted to exact from relator the motor vehicle tax upon these 57 new and unused cars at any time during 1928 while they remained in that status, we believe such attempt could have been successfully resisted as not authorized by the constitutional provision quoted. As we construe subd. (c) it applies only to motor vehicles held by a dealer for sale which are not subject to any other tax than the motor vehicle tax, that is, cars upon which such tax has been paid in this state some previous year or cars which have been users of our public highways as defined by G. S. 1923 (1 Mason, 1927)

§ 2687. It cannot have been the intention of the legislature that if relator had sold, after May 1, only three of the 57 new and unused cars it listed for ad valorem tax, it would then have been compelled to pay the motor vehicle tax upon the 54 cars unsold. They were still new and unused cars and subject only to the ad valorem tax so long as they remained within that definition. .

The other contention is that subd. (b) above set out fairly construed entitles relator to an abatement of the personal property tax in the amount the assessed value of the 54 cars sold augmented that tax. It is said such a construction should be given to avoid unjust double taxation. as well as to comply with the provision of art. 16, § 3, of the constitution, that the motor vehicle tax "shall be in lieu of all other taxes" on the vehicle except city, village, or borough wheelage tax.

There is force in the contention. But we deem the whole act lends itself better to the conclusion that the right granted in subd. (b) relates only to cars in the dealers' hands on May 1, subject to an ad valorem tax, which he subsequently so uses in his business or for his own purposes that payment of the motor vehicle tax must be made.

The law should be so construed that both the owner of the motor vehicle and the officials having to do with the collection and disposition of the tax will know whether the ad valorem or the motor vehicle tax applies. The former goes to state, county and municipal use; the latter to highway purposes only. It is therefore of some importance that the ad valorem tax be assessed and collected where the property is subject thereto, even though the owner of the same property be willing to pay a more onerous tax in order that it be devoted to the building and maintenance of public highways.

Another consideration is this. Automobile dealers now are engaged in very extensive business employing vast capital. If this capital is kept invested in large stocks of cars which may be so handled during the year that purchasers of cars by paying the motor vehicle tax upon all the cars the dealer returned for ad valorem

tax, he wholly escapes taxation on the capital invested in such stock of cars.

Again, on the first of May automobile dealers make a return for taxation of their stocks of new and unused cars on hand for sale, which well may be assumed to amount to very large amounts. The authorities estimate income for state, county, and municipality and fix the rate of taxation on the basis that an ad valorem tax upon the assessment so returned by the dealers will be forthcoming, but find at the end of the year, if relator's contention is sustained, that it has been depleted or perhaps wholly wiped out by the reduction or abatement on account of cars sold by the dealers after May 1 from the stock listed for the ad valorem tax. It cannot be that the legislature intended this law to bring about such a result. The construction we place upon subd. (b) would not cause any great disturbance in the disposition of the funds derived from the taxation of motor vehicles. It would only mean that if the dealer, from the stock subject to ad valorem tax, appropriates to his own use, whatever that may be, a car upon which the motor vehicle tax must be paid, he may then ask for an abatement or reduction of the ad valorem tax occasioned by the inclusion therein of such car.

Of course a tax law should be so construed as to avoid, if possible, double taxation. State v. N. P. Ry. Co. 130 Minn. 377, 153 N. W. 850, and authorities therein cited. But it is not clear that double taxation, in the ordinary sense, follows from our interpretation. The personal property in the hands of the owner on May 1 must pay ordinary personal property tax thereon for the year, except motor vehicles subject to the motor vehicle tax. If in the personal property so assessed are motor vehicles not then subject to the motor vehicle tax but thereafter so become, the tax is in part a privilege tax for the use of the public highways, so it is not entirely a property tax. That use is a part for which such tax is paid appears also from the fact that the amount varies somewhat according to the length of the period of time for which it runs, when imposed after July 31—that is, it is somewhat regulated according to the period of time the use of the public highway is afforded.

The law nowhere requires the dealer to pay the motor vehicle tax upon cars sold. We may take notice of the fact that new cars are listed for sale at fixed prices. Relator so sold them but added to such price the amount paid for the motor vehicle tax, so that this tax was in fact paid by the party who intended to put and did put the vehicle to "using the public streets and highways." The law nowhere intimates that any one but the dealer may make application for reduction or abatement under subd. (b). In a broad and we think in a fair sense, relator does not bring itself within the spirit of subd. (b). It could dispose of the cars without itself paying the motor vehicle tax. It paid such tax, but not until it had purchasers at hand to furnish the money. What relator did in the way of paying the motor vehicle tax properly may be considered as having been done for the accommodation of the purchasers or as their agents.

Other sections of the law are referred to, but we do not think them helpful upon the questions here presented. In our opinion the tax commission properly denied relator's application.

The order is affirmed.

