STATE v. DULUTH, MISSABE & NORTHERN RAILWAY COMPANY AND ANOTHER.

STATE v. DULUTH & IRON RANGE RAIL ROAD COMPANY AND ANOTHER.

STATE v. SPIRIT LAKE TRANSFER RAILWAY COMPANY AND ANOTHER.[1]

December 29, 1939.

Nos. 32,124, 32,125, 32,126.

Reargument denied April 26, 1940.
See 207 Minn. 637.

[1]Reported in 292 N. W. 401.

620

*J. A. A. Burnquist,* Attorney General, and *John A. Pearson* and *Irving M. Frisch,* Special Attorneys, for the State.

*Elmer F. Blu, Clarence J. Hartley,* and *Kellogg, Morgan, Chase, Carter & Headley,* for respondents.

*J. P. Plunkett,* General Attorney, Great Northern Railway Company, *amicus curiae,* filed a brief in support of the contention of respondents.

LORING, JUSTICE.

These appeals by the state arise out of three of the five actions brought by it under L. 1933, c. 405, § 45, to impose upon the defendant railway companies and upon the Oliver Iron Mining Company and the Proctor Water & Light Company the tax provided for in § 2 of that chapter; that is, the "annual tax for the privilege of existing as a corporation or of transacting any local business within this state * * * measured by its taxable net income." All the corporations involved in the five suits are and were during the year 1933 wholly owned by the United States Steel Corporation. In the cases against Oliver Iron Mining Company and Proctor Water & Light Company the trial court decided against their right to be taxed upon the combined entire taxable net income of the 80 corporations affiliated under the ownership of the Steel Corporation. Their appeals to this court resulted in reversal of the trial court in an opinion filed herewith

by which we sustained the right of the affiliated corporations to be taxed as one corporation under c. 405, § 32(c). State v. Oliver I. Min. Co. 207 Minn. 630, 292 N. W. 407. Defendant railroad companies were included in the consolidated report.

The trial court held that the tax provided for by c. 405, § 2, if applied to railroads, amounted to an amendment of the gross earnings tax law, and because c. 405 had not been submitted to a vote of the people it was, as applied to railroads, unconstitutional under the provisions of Minn. Const. art. 4, § 32a. From that decision the state has appealed, and the principal question presented by these appeals is whether or not c. 405, § 2, violates Minn. Const. art. 4, § 32a, which reads:[2]

At this late date it is unnecessary to go into a protracted discussion of the history, character, or effect of the gross earnings tax as it has been applied to railroads in this state. That form of taxation was applied to railroads in territorial days and by contract in the state prior to 1871 when it was validated and incorporated into the state constitution, which forbade the repeal or amendment of laws theretofore or thereafter enacted which provided or should provide for a gross earnings tax in lieu of all other taxes and assessments upon the real estate, roads, rolling stock, and other personal property of the railroads, without submitting such repeal or amendment to a vote of the people.

1. Throughout the legislation it is apparent that the gross earnings tax was imposed in lieu of all other taxes upon real

2"Any law providing for the *repeal or amendment* of any law or laws heretofore or hereafter enacted, which provides that any railroad company now existing in this state, or operating its road therein, or which may be hereafter organized, shall *in lieu of all other taxes and assessments upon their* [sic] *real estate, roads, rolling stock, and other personal property*, at and during the time and periods therein specified, pay into the treasury of this state a certain percentage therein mentioned of the gross earnings of such railroad companies now existing or hereafter organized, shall *before the same shall take effect or be in force, be submitted to a vote of the people* of the state, and be adopted and ratified by a majority of the electors of the state voting at the election at which the same shall be submitted to them." (Italics supplied.)

and personal property owned or operated for railway purposes, including franchises, and 1 Mason Minn. St. 1927, § 2246, is the present act in force by virtue of submission to the people and reads in part as follows:

"Gross earnings—Every railroad company *owning* or *operating* any line of railroad situated within or partly within this state, shall, during the year 1913 and annually thereafter, pay into the treasury of the state, in lieu of all taxes, upon all property within this state *owned* or *operated* for railway purposes, by such company, including equipment, appurtenances, appendages and *franchises* thereof, a sum of money equal to five per cent of the gross earnings derived from the operation of such line of railway within this state.

"* * * and the payments of such sums at the times hereinbefore set forth shall be in full and in lieu of all other taxes upon the *property and franchises* so taxed. * * *" (Italics supplied.)

In 1932 an amendment to the constitution was adopted authorizing license taxes on motor vehicles owned by companies paying gross earnings taxes, but at the same election the people disapproved of a proposed amendment which would have relieved the legislature of the necessity of submitting to the people any law imposing a tax upon the income, franchises, or privileges of railroad companies. Thus it is quite clear that the legislature and the people took the view that the franchises were property used in railroad operation and were covered by the gross earnings tax and were subject to the protection of art. 4, § 32a.

This court has repeatedly held that the gross earnings tax is a property tax upon all railroad property owned or operated for railroad purposes measured by the gross earnings of such property taken as a whole. Railway Express Agency, Inc. v. Holm, 180 Minn. 268, 230 N. W. 815. That of course includes intangible as well as tangible property. The franchise to exist and to operate is a vital part of the railroad's property absolutely necessary before it can turn a wheel or earn a dollar. It contributes its

part to the gross earnings, which are a measure of the tax upon the property. It is quite clear to us that the legislature by the provisions of § 2246 realized that it was taxing, and intended to tax by means of gross earnings, the property rights of the corporation to exist and to operate when it said that the gross earnings tax should be in full and in lieu of all other taxes upon the property and franchises so taxed.

2. The tax imposed upon a corporation by c. 405, § 2, is described by the legislature in that section as a tax "for the privilege of existing as a corporation or of transacting any local business within this state during any part of its taxable year, measured by its taxable net income for such year."

Is this a property tax upon the franchise? If so, then it is a tax upon a subject covered by the gross earnings tax and is invalid without a vote of the people to approve it. The state contends that it is an excise tax, and presents an elaborate and learned argument to that effect. We think, however, that the question is completely and conclusively answered in favor of defendants by the decision of this court in the case of Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216, 266 N. W. 690. The question there presented was whether the corporate excess tax provided for in 1 Mason Minn. St. 1927, § 2021, was superseded and repealed by implication by various tax statutes subsequently enacted. A part of the problem there confronting the court was adjudication of the character of the tax imposed by c. 405, § 2. We there held that both the good will and franchises, as property, are included within the expressed subject of c. 405, § 2, which for convenience is referred to as the income tax law. This holding was addressed to the merits of the question then before this court. Other cases might be cited, but we deem the Bemis case conclusive on this point.

Like the gross earnings tax law, c. 405, § 2, is a tax upon property measured by the net taxable income of the corporation. By its terms the section makes the tax a property tax and not an excise tax. We therefore hold that the tax imposed by c. 405, § 2, is a tax upon property already taxed under the gross earnings

tax and hence as applied to railroad corporations is invalid as to franchises insofar as they are exercised for railroad purposes.

3. Earnings from any source other than ownership or operation for a railroad purpose are not included in the gross earnings tax measure. Any property owned by the railroad, but used for a non-railroad purpose, is subject to ordinary *ad valorem* property taxation. County of Todd v. St. P. M. & M. Ry. Co. 38 Minn. 163, 36 N. W. 109; State v. Minnesota & I. Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426. The gross earnings tax is defined by the constitution and the gross earnings statute to be in lieu of all other taxation upon property, etc. used for railroad purposes. The necessary corollary to such provision is that, as to property not used for railroad purposes, other forms of taxation may be applied. Defendants insist that a tax upon a franchise contemplates a tax upon something indivisible, and that the franchise, being taxed by the gross earnings tax, cannot be taxed also by the income tax, even though it is being exercised for a nonrailway purpose and earning income therefrom. Holding that the franchise is property and that a tax upon it is a property tax, we must also hold, in accordance with prior holdings as to property not owned or used for railroad purposes, that such property is subject to ordinary taxation. To do otherwise would cause inconsistency with well settled rules in this state. City of St. Paul v. St. P. M. & M. Ry. Co. 39 Minn. 112, 38 N. W. 925; County of Ramsey v. C. M. & St. P. Ry. Co. 33 Minn. 537, 24 N. W. 313; State v. N. W. Tel. Exch. Co. 84 Minn. 459, 87 N. W. 1131. If a railroad exercise its corporate franchise for railroad purposes and also for nonrailroad purposes, that part of its exercise for nonrailroad purposes cannot escape taxation. It follows that railroads may not be subject to the franchise tax imposed by c. 405 measured by income from railroad ownership or operation because for such exercise of the franchise the gross earnings tax is exclusive, but that they are subject thereto insofar as the franchise is exercised, whether *ultra vires* or not, for other than railroad purposes. That part of the franchise so exercised is as separable, as much subject to ordinary taxes, as is any nonrailroad property. The pur-

pose of the legislature in not listing railroads among the exempt must have been to assure taxation of any income not attributable to railroad ownership or operation.

4. The state lists in its brief a number of items which it claims to be "nonoperating income," intending thereby to challenge the income therefrom as not properly earnings which result from railroad ownership or operation. Included in this list are the so-called "recapture" funds returned by the United States government to the railroads by act of congress, 48 St. 220, 49 USCA, § 15b. The United States under the transportation act of 1920, 41 St. 489, 49 USCA, § 15a(6), took one-half the net earnings of railroads over and above six per cent and held such sums for railroad transportation purposes. Defendants at the time paid taxes on their property measured by all their gross earnings including these funds and paid these funds to the government partly in cash and partly in liberty bonds. Can the return of these deposits by the government together with interest and accretions be deemed nonrailroad income for 1933 and as such taxable under c. 405? It seems clear that the original deposits were railroad income subject to the gross earnings tax and upon which such tax was paid. Therefore such returned funds cannot be considered nonrailroad income under c. 405, § 2. The repayment amounts to nothing more than the return to defendants of their own railroad earnings. The restoration reinstated the earnings in their original status. The funds, then, having been taken in the first instance for railroad purposes, held by the government for such purposes, and returned to the companies for railroad purposes, are not taxable under c. 405. We need not decide whether the accretions and interest are taxable items because the combined net loss reported is sufficient to absorb both items as well as some others subsequently discussed. The act of congress providing for the repayment of these recapture funds, 48 St. 220, expressly required that such repayments should be subject to federal income taxes. The board of tax appeals cases cited by the state are therefore not authority here.

5. The state also asserts a claim that income from federal securities is taxable "nonoperating income." Defendants contend that because interest on all state and local securities is expressly exempt it would be discriminatory against the federal government not to exempt interest on federal securities. Pertinent provisions of c. 405 are subds. (f) and (g) of § 12, exemptions from gross income:

"(f)  Interest upon obligations of the State of Minnesota, any of its political or governmental subdivisions, any of its municipalities, or any of its governmental agencies or instrumentalities.

"(g)  Income received from the United States, its possessions, its agencies, or its instrumentalities, so far as immune from state taxation under federal law."

Of course, the income from federal securities is, and was at the time c. 405 was enacted, immune from state taxation. Subd. (g), by expressly exempting income from federal securities so far as immune from state taxation under federal law, in effect, provides that such income shall not be included in the measure of the franchise tax. Although a state may constitutionally impose a franchise tax measured by income, including income from tax-exempt securities, Flint v. Stone Tracy Co. 220 U. S. 107, 31 S. Ct. 342, 55 L. ed. 389, Ann. Cas. 1912B, 1312, subd. (g) provides that such income shall not be included as a measure of the tax on the franchise. Even if this were not true, the inclusion of income from tax-exempt securities as a measure of the tax is objectionable when it evidences an attempt to discriminate against income from a particular source. Miller v. Milwaukee, 272 U. S. 713, 47 S. Ct. 280, 71 L. ed. 487; Schuylkill Trust Co. v. Pennsylvania, 296 U. S. 113, 56 S. Ct. 31, 80 L. ed. 91. The dissent in the latter case said that the discrimination must be either unfriendly in design or in favor of securities in competition with federal securities included in the tax. It seems, in the instant case, that to allow taxation of federal government securities under subd. (g) would operate not only as a discrimination, but also as an unfriendly one, to the favor of local securities

which are in fact in substantial competition with the federal securities. We therefore conclude that under any interpretation of subd. (g) income from federal securities should not be included in the measure of the tax on defendants' nonrailroad income imposed by c. 405. The state's contention that we should hold the exemption of local securities invalid and enforce taxation against incomes from all securities is not tenable. The wording of subd. (g) precludes such a disposition of the problem.

6. Acting under the provisions of c. 405, §§ 9(a), 32(b, c), and 43(a), the tax commission sought to increase the interest rate payable by the parent to the subsidiary companies on their demand deposits with the parent corporation. The rate established between the companies was 2½ per cent (in the case of one of the companies 2 per cent), and this had been the rate for a long time before c. 405 was enacted. There was no evidence of attempted tax evasion. Therefore the tax commission had no authority to change the rate under the provisions of § 32(b) which are aimed at evasion. Section 9(a) is aimed exclusively at methods of accounting. Here there is no claim that the defendants employed no accounting system or that the system employed did not fairly reflect true taxable income. The tax commission had therefore no authority to increase the interest rate under § 9(a). Section 43(a) empowers the commission to examine the return and make investigation to determine the correctness thereof. Such provision does not empower the commission arbitrarily to increase the amount of taxable income. The amount of interest actually paid by the parent to the subsidiary companies was in fact 2½ per cent. A return showing taxable income of the amount such rate brought could not be deemed incorrect. It follows that the commission had no statutory authority to change the rate of interest. The trial court found as a fact that the 2½ per cent rate was reasonable in 1933 for demand deposits, that such had been the rate between the parent and these subsidiaries for a period of time long before the income tax law was enacted, and that there was no collusion on the part of these defendants or the parent company. There was sufficient evidence to sustain such findings.

If the 2½ per cent rate was reasonable, then twice that rate would be unreasonable and arbitrary, especially when imposed without any evidence whatever upon which an inference of evasion could be based.

7. The state contends that the rent received by the Duluth & Iron Range Rail Road, which leased its entire railroad property to the Duluth, Missabe & Northern Railway Company, renders the Iron Range corporate franchise to exist taxable under c. 405 and that such rent should be included in the income which is the measure of the tax upon the franchise.

The gross earnings tax is a tax on all the railroad property owned by the Iron Range and leased to the Missabe. The character of the tax results in its being paid by the lessee, but it is a tax on whatever interest the lessor has in the property, tangible or intangible. It cannot be increased or supplemented by an additional tax without the approval of the people. To impose another tax would be, in effect, to amend § 2246, which by its terms covers ownership of railroad property as well as operation. To impose a tax on the lessor's receipts would be to duplicate the tax on the same property. State v. St. P. M. & M. Ry. Co. 30 Minn. 311, 15 N. W. 307. The state contends that it is not duplication and that the franchise to be is left entirely separate from the operations of the railroad by the terms of the lease. We do not so regard the situation. The gross earnings tax by its terms is in lieu of an *ad valorem* tax on the ownership as well as the operation of property which is devoted to railroad purposes, and it does not change the situation that the tax in its nature falls entirely on the lessee operator. State v. St. P. M. & M. Ry. Co. 30 Minn. 311, 15 N. W. 307. The franchise is being exercised by the lessor for railroad purposes, and consequently its earnings in the form of rent from property devoted to such purposes may not be used as a measure of taxable net income imposed upon the franchise under c. 405. To do so would increase the property tax upon the franchise without approval of the people. The foregoing applies as well to the Spirit Lake rent. The following cases are of interest. State v. St. P. Union Depot Co. 42 Minn. 142, 43

N. W. 840, 6 L. R. A. 234; State v. N. P. Ry. Co. 130 Minn. 377, 153 N. W. 850; State v. C. R. I. & P. Ry. Co. 181 Minn. 615, 232 N. W. 105, 233 N. W. 866; Whitman v. Northern Cent. Ry. Co. 146 Md. 580, 127 A. 112.

8. The nonrailroad income, if any, is necessarily subject to the provisions of c. 405, § 32(c), and should be included in the combined taxable net income of the affiliated corporations since the defendants herein are wholly owned by the Steel Corporation. We do not need to decide the character of the items listed as "rents received," amounting to $223,000, because under the consolidated return the combined deficit is so large that even if the whole sum of $223,000 together with the items of accretions and interest referred to above were included in the return as nonrailroad income, there would still be a loss, and therefore no tax could be imposed in these proceedings. We therefore sustain the result reached in the trial court.

Judgments affirmed.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.