## WESTERN UNION TELEGRAPH COMPANY v. G. HOWARD SPAETH.[1]

October 20, 1950.

Nos. 35,218, 35,219, 35,220.

[1]Reported in 44 N. W. (2d) 440.

J. A. A. *Burnquist*, Attorney General, and *Charles P. Stone*,
Assistant Attorney General, for appellant.

*Coursolle, Preus & Maag, John H. Waters*, and *Robert C. Barnett*,
for respondent.

CHRISTIANSON, JUSTICE.

Appeals by defendant, consolidated for review before this court,
from judgments entered for plaintiff in three separate actions
brought to recover refunds of Minnesota franchise taxes paid by
plaintiff to defendant under protest.

In 1949, plaintiff instituted three separate actions in the dis-
trict court for Ramsey county to secure refunds of franchise taxes
and interest paid the commissioner of taxation under Minn. St.
1941, § 290.02, for the calendar years 1941, 1942, and 1943.[2] Pre-
viously, its claims for said refunds had been denied by the com-
missioner.

Plaintiff is a New York corporation. During the years 1941,
1942, and 1943 it was qualified to do business within this state.
It filed Minnesota corporation income and franchise tax returns
with the commissioner of taxation for the calendar years 1941,
1942, and 1943. The commissioner determined that plaintiff, a

---

[2] Minn. St. 1941, § 290.02 (L. 1933, c. 405, § 2, as amended by Ex. Sess. L.
1937, c. 49, § 2), reads as follows:

"An annual tax is hereby imposed upon every domestic corporation, ex-
cept those included within section 290.03, for the privilege of existing as
a corporation during any part of its taxable year, and upon every foreign
corporation, except those included within section 290.03, for the grant to
it of the privilege of transacting or for the actual transaction by it of any
local business within this state during any part of its taxable year, in cor-
porate or organized form.

"The tax so imposed shall be measured by such corporations' taxable net
income for the taxable year for which the tax is imposed, and computed in
the manner and at the rates provided in this chapter."

telegraph company, was liable for franchise taxes for each of said calendar years, and on November 14, 1944, entered his orders of assessment therefor. The assessments were paid in full, with reservation of the right to file claims for refund. Plaintiff had previously paid a gross earnings tax for each of said years under Minn. St. 1941, § 295.32.[3]

In its complaints, plaintiff alleged that it was not liable for said franchise taxes. Defendant in his answers admitted all the foregoing facts but denied plaintiff's allegations of nonliability therefor. The lower court granted plaintiff's motions for judgment on the pleadings in the three actions, and judgment for plaintiff was entered pursuant thereto in each action for the total taxes and interest paid by plaintiff for the calendar years 1941, 1942, and 1943, plus statutory interest thereon and costs. In granting the judgments for plaintiff on the pleadings, the lower court held that the cases were controlled by the case of The Pullman Co. v. Commr. of Taxation (1947) 223 Minn. 96, 25 N. W. (2d) 838.

Defendant admits that the questions involved in the present appeals are the same as those presented to the court in the Pullman case, but urges that the majority opinion in the Pullman case, construing Minn. St. 1941, § 290.02, as imposing an ad valorem property tax and not an excise tax, should be overruled, and that the views expressed in the minority opinion to the effect that the franchise tax is an excise tax rather than a property tax should now be adopted by the present court.

The sole question for determination here is whether plaintiff, a telegraph company, was subject to the franchise tax imposed

---

[3]Minn. St. 1941, § 295.32 (Ex. Sess. L. 1937, c. 4, § 1), provides:

"Every telegraph company shall pay into the state treasury, on or before March first, of each year, beginning with March 1, 1938, seven per cent of its gross earnings derived from business within the state during the preceding calendar year, which shall be in lieu of all ad valorem taxes upon the property of such company within the state for the year during which such gross earnings accrued."

by Minn. St. 1941, § 290.02, for the calendar years 1941, 1942, and 1943.

If the franchise tax which plaintiff was compelled to pay for the calendar years 1941, 1942, and 1943 was an ad valorem property tax, the judgments must be affirmed, because plaintiff had paid its gross earnings tax under Minn. St. 1941, § 295.32, for each of said years. Section 295.32 expressly provides that the gross earnings tax imposed thereby upon telegraph companies "shall be in lieu of all ad valorem taxes upon the property of such company within the state for the year during which such gross earnings accrued."

Prior to the Pullman case, this court had the franchise tax act before it for consideration in the cases of Bemis Bro. Bag Co. v. Wallace (1936) 197 Minn. 216, 266 N. W. 690, and State v. D. M. & N. Ry. Co. (1939) 207 Minn. 618, 292 N. W. 401. In each of those cases, the court construed the franchise tax imposed thereby to be a property tax rather than an excise tax. None of the provisions of the act material here were changed from the time of its original enactment in 1933[4] until after the decision in the Pullman case was filed in 1947. Numerous sessions of the legislature were held after the act had been construed by this court in the Bemis Bro. Bag Co. case in 1936 and in State v. D. M. & N. Ry. Co. in 1939, yet the legislature did not see fit to alter the construction that theretofore had been placed thereon by this court until it amended the law in 1947.[5] The

[4]See, L. 1933, c. 405, §§ 2 and 4(a), and compare Ex. Sess. L. 1937, c. 49, §§ 2 and 4.

[5]L. 1947, c. 635, § 2, amended Minn. St. 1945, § 290.02, to read as follows:

"An annual *excise* tax is hereby imposed upon every domestic corporation, except those included within section 290.03, for the privilege of existing as a corporation during any part of its taxable year, and upon every foreign corporation, except those included within section 290.03, for the grant to it of the privilege of transacting or for the actual transaction by it of any local business within this state during any part of its taxable year, in corporate or organized form.

"The tax so imposed shall be measured by such corporations' taxable

"judicial construction of a statute, so long as it is unreversed, is as much a part thereof as if it had been written into it originally." 6 Dunnell, Dig. & Supp. § 8936b, and cases cited in notes. The adoption of an amendment raises a presumption that the legislature intended to make some change in the existing law. See, State ex rel. Verbon v. County of St. Louis, 216 Minn. 140, 145, 12 N. W. (2d) 193, 196, and cases there cited.

The statute here in question (Minn. St. 1941, § 290.02) was reenacted by the legislature in 1945 when our revised statutes were adopted.[6] No modification of the statute was made in the revision. See, Minn. St. 1945, § 290.02. This court has frequently held that the reënactment of a statute without change, after construction of the statute by the court, presumptively constitutes an adoption of such construction.[7] Christgau v. Woodlawn Cemetery Assn. 208 Minn. 263, 293 N. W. 619; In re Trusteeship Under Will of Jones, 202 Minn. 187, 277 N. W. 899; Wenger v. Wenger, 200 Minn. 436, 274 N. W. 517. See, Murray v. Floyd, 216 Minn. 69, 73, 11 N. W. (2d) 780, 784. Thus, the prior construction given this act in Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216, 266

net income for the taxable year for which the tax is imposed, and computed in the manner and at the rates provided in this chapter."

[6]See, State ex rel. Bergin v. Washburn, 224 Minn. 269, 28 N. W. (2d) 652, and "An Act Providing that the compilation and revision of general statutes of the state of Minnesota of a general and permanent nature, * * *" approved March 8, 1945, quoted in the preface to M. S. A. § 1, subd. 1, of that act, which provides: "The compilation and revision of the general statutes of the state of Minnesota of a general and permanent nature, prepared by the revisor of statutes under the provisions of Laws 1943, Chapter 545, and filed in the office of the secretary of state on December 28, 1944, is hereby adopted and enacted as the 'Minnesota Revised Statutes.'"

[7]Minn. St. 1945, § 645.17 (L. 1941, c. 492, § 17), provides in part as follows: "In ascertaining the intention of the legislature the courts may be guided by the following presumptions:

* * * * *

"(4) When a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language; * * *"

N. W. 690, and State v. D. M. & N. Ry. Co. 207 Minn. 618, 292 N. W. 401, was "one of legislative sanction and action." See, State ex rel. Bergin v. Washburn, 224 Minn. 269, 274, 28 N. W. (2d) 652, 654.

The fact that the 1947 legislature amended Minn. St. 1945, § 290.02, so as to state that the tax imposed thereunder is an "excise tax" is not persuasive that we should change the law as it previously existed and now hold that the franchise tax contemplated by and imposed under the prior enactments was an excise tax and not a property tax. Were we to do so, we would, as a practical matter, be amending a tax statute retroactively which had stood unaltered with the same force and effect for more than 14 years.

Whether the decision of the majority in The Pullman Co. v. Commr. of Taxation, 223 Minn. 96, 25 N. W. (2d) 838, holding the tax in question to be an ad valorem property tax and not an excise tax, was right or wrong, to overrule it now by mere judicial power and to disturb the prior decisions upon which it was based would be a far greater mistake than the making of such decisions, even if erroneous. Where the legislative and judicial history of a tax law is such as we find here and no impelling consideration of justice exists requiring us now to overrule this court's prior holdings, the doctrine of *stare decisis* should be regarded as the governing principle in respect thereto.

Our conclusion is that the decision of the lower court was correct and that the judgments for plaintiff should be affirmed.

Affirmed.

MAGNEY, JUSTICE (concurring).

I still adhere to the view expressed in the dissenting opinion in The Pullman Co. v. Commr. of Taxation, 223 Minn. 96, 25 N. W. (2d) 838. However, for reasons set out in the last paragraph of the above opinion, I reluctantly concur.