262 N.W.2d 163 (1978)
COUNTY OF WASHINGTON, Respondent,
v.
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL NUMBER 91, Appellant.
No. 47085.
Supreme Court of Minnesota.
January 13, 1978.
*164 Cloutier, Musech, Diker, Berde & Corwin, Gregg M. Corwin, Minneapolis, and Zwerdling & Maurer, Washington, D.C., for appellant.
Peter D. Bergstrom, St. Paul, for respondent.
Considered and decided by the court en banc.
PETERSON, Justice.
This is an action for a declaratory judgment under Minn.St. c. 555 brought by Washington County (county) against the American Federation of State, County and Municipal Employees, Council No. 91 (union). The district court ordered judgment for the county declaring that Minn.St. 1976, § 179.65, subd. 6, a provision of this state's Public Employment Labor Relations Act (PELRA), barred the union from representing both a bargaining unit of supervisory employees and a bargaining unit of nonsupervisory employees of the Washington *165 County Welfare Department because of potentially serious conflicts of interest.[1] We reverse and hold that under the present statute, Minn.St. 179.65, subd. 6, the union may represent both bargaining units, provided the units are separate locals of the union and provided they bargain separately with the welfare department.
The facts are not disputed. The union has been the certified representative of nonsupervisory, nonconfidential employees of the welfare department since late 1971. In March 1975, the union filed a petition with the Bureau of Mediation Services (BMS) to determine an appropriate unit for supervisory employees of the welfare department and to certify the union as their representative. Accompanying the petition were authorization cards signed by five of the six employees alleged to be supervisors.
At the hearing on the petition, the county took the position that the six employees were not supervisors and should be included in the nonsupervisory bargaining unit already represented by the union. The county stipulated, however, that if BMS held that there should be a supervisory employees' bargaining unit, the county would allow the authorization cards to "stand in lieu, or in place of an election" for purposes of certifying a representative of the supervisory unit.
In May 1975, BMS found that the six employees were supervisory employees and that the welfare department's supervisory employees comprised an appropriate bargaining unit. On the basis of the county's stipulation that it would accept the authorization cards in lieu of an election, BMS certified the union as the representative of a bargaining unit consisting of the welfare department's supervisory employees.
Following this decision by BMS, the union requested that the county meet with it and negotiate a collective bargaining agreement for the welfare department's supervisory employees. The county refused to negotiate and instituted this action for a judgment declaring that it was contrary to Minn.St. 1976, § 179.65, subd. 6, for the union to represent both the supervisors' and the nonsupervisors' bargaining units and that the county had no duty to bargain with it concerning the unit of supervisors.
In July 1976, the district court ordered declaratory judgment for the county, reasoning that Minn.St. 1976, § 179.65, subd. 6, should be interpreted "to avoid the basic conflict of interest between the two employee groups and [to] protect the interests of the public employer in this respect." The union appealed to this court, and while our decision was pending the legislature enacted House File No. 805 which further amended § 179.65, subd. 6.[2] We then remanded to the district court for reconsideration in light of this amendment, and the district court confirmed its original judgment.[3] Thus the case is again before us for *166 review. Since the statute is controlling, our task is to ascertain the legislature's intent in enacting Minn.St. 1971, § 179.65, subd. 6, and in amending its provisions in 1973 and 1977. The 1971 statute was amended in 1973 as follows:
"Subd. 6. Supervisory and confidential employees, principals and assistant principals, may join and participate in employee organizations and may form their own organizations, provided, however, that nothing in this section authorizes supervisory or confidential employees, or principals and assistant principals, to be included in an appropriate unit. Affiliation of a supervisory or confidential employee or principal or assistant principal organization with another employee organization which has as its members non-supervisory employees or non-confidential employees, or non-principals or non-assistant principals is permitted. An employer shall not, and shall not be required by the director to extend exclusive recognition to a representative of or an organization of supervisory or confidential employees, or principals and assistant principals, for the purpose of negotiating terms or conditions of employment, but an employer may consult and otherwise communicate with such an organization on appropriate matters. in accordance with all other provisions of this act, as though they were essential employees." (Stricken words indicate deletion; italics indicate new language added.) L. 1973, c. 635, § 13.
The 1977 amendment, effective August 1, 1977, added a third and fourth sentence to the above amended text:
"* * * Units of supervisory or confidential employees shall not participate in any joint negotiations which involve the participation of units of employees other than supervisory or confidential employees. Affiliation of a supervisory or confidential employee with another employee organization which has as its members non-supervisory employees or non-confidential employees is permitted." L. 1977, c. 119, § 1.
Under PELRA, as enacted in 1971, the legislature recognized the differences in the positions of supervisors and nonsupervisors and did not accord supervisors the same organizational rights as nonsupervisors. This was accomplished by stating in Minn.St. 1971, § 179.65, subd. 2, that only "[p]ublic employees in an appropriate unit" had the right to designate an exclusive representative to meet and negotiate with the employer. (Italics supplied.) And an "appropriate unit" or "unit" is defined in Minn.St. 179.63, subd. 17, to exclude supervisory employees. The exclusion of supervisory employees from the definition of "appropriate unit" was reiterated in Minn.St. 1971, § 179.65, subd. 6, which allowed supervisors to form organizations which would meet and confer with an employer, but not meet and negotiate the terms of employment.
When the legislature amended PELRA in 1973 to expand the organizational rights of supervisors, it did not carefully integrate the amendments into the statutory scheme. For example, the legislature did not expand the statutory definition of "appropriate unit" to bring supervisory employees under the general provisions of § 179.65, subd. 2.[4] More importantly, the legislature did not clearly state in the 1973 amendments to § 179.65, subd. 6, its intent with respect to affiliation between supervisors' and nonsupervisors' organizations.
*167 The 1977 amendment appears to address the affiliation issue, albeit again with some imperfection, and appears to make clearer what the legislature may well have undertaken to do in 1973. The 1977 amendment effectively speaks to the pre-existing dispute between the county and the union because the controversy about which the county seeks a declaratory judgment is a continuing one and the statutory amendment bears on the continuing relationship between labor and management.
In interpreting the 1977 amendment, we recognize that courts should ordinarily analyze closely the amendment itself before turning to extrinsic evidence of legislative intent, such as legislative history. But here we will first turn to the parties' arguments concerning legislative history because they raise a question as to what words actually comprise the amendment.
It will be recalled that the 1977 amendment to § 179.65, subd. 6, was by enactment of H.F. 805. As originally introduced, H.F. 805 was a one-sentence amendment to the statute which, the parties agree, would have settled the issue presented by this case in favor of the union. The original bill stated:
"* * * Affiliation of a supervisory or confidential employee or principal or assistant principal organization with another employee organization which has as its members non-supervisory employees or non-confidential employees, or non-principals or non-assistant principals is permitted." (Italics supplied.)
After hearing in the Committee on Labor-Management Relations, the bill was reported to the House with amendments which are specified in the Journal of the House, 1977, p. 848. These amendments modified the original bill as follows:
"* * * Units of supervisory or confidential employees shall not participate in any joint negotiations which involve the participation of units of employees other than supervisory or confidential employees. Affiliation of a supervisory or confidential employee or principal or assistant-principal organization with another employee organization which has as its members non-supervisory employees or non-confidential employees, or non-principals or non-assistant principals is permitted."
With these modifications, the bill was passed by the House and later by the Senate.
The union argues that in the amended bill the words "or principal or assistant principal" and "or non-principals or non-assistant principals" were deleted as superfluous. And it vigorously argues, with the support of affidavits from members of the House Committee on Labor-Management Relations, that the additional deletion of the word "organization" was a typographical error which this court should correct by simply reading the word back into the amended statute.
The county argues with equal vigor that the deletion of the word "organization" was intentional and that this change in the text of the bill is extrinsic evidence that the legislature did not intend the amendment to permit affiliation between supervisory and nonsupervisory employee organizations.
We reject both parties' arguments on these points. We reject the union's argument because the affidavits of individual legislators are not competent to impeach the text of the enrolled bill. See, 2A Sands, Sutherland Statutory Construction (4 ed.) § 48.16. Moreover, the respect due to the legislature as a coequal and an independent branch of government and the need for finality and certainty as to the text of a statute do not allow us to brand the legislative deletion of a word from a bill as a "mistake" and to reinstate the word without further ado. See, Wallace v. Commissioner of Taxation, 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971).
We at the same time reject the opposing argument made by the county that the deletion of the word "organization" is in this case extrinsic evidence of legislative intent. It is true that courts will often refer to legislative changes in a bill in order to interpret the statute into which it was finally *168 enacted. See, 2A Sands, Sutherland Statutory Construction (4 ed.) § 48.18. However, such general guides to legislative intent are not helpful in every case. As Sutherland cautions:
"* * * An amendment may have been adopted, however, only because it expressed better a provision already embodied in the original bill or because the provision in the original bill was deemed unnecessary because unwritten law would produce the same result without it. Thus caution must be exercised in using the action of the legislature on proposed amendments as an interpretative aid." Id.
In this case, we are unable to derive any clear indication of legislative intent from the deletion of the word "organization." We thus turn to the amended statute itself.
When the legislature amends a statute, it is usually presumed that it intends some change in the law.[5]Honeymead Products Co. v. Aetna Casualty & Surety Co., 270 Minn. 147, 132 N.W.2d 741 (1965); Western Union Tel. Co. v. Spaeth, 232 Minn. 128, 44 N.W.2d 440 (1950). In the present case, the presumption of the legislative intent to change § 179.65, subd. 6, by the 1977 amendment is strengthened by the parties' agreement that the amendment was in response to the district court's judgment.
The final sentence of § 179.65, subd. 6, now provides:
"* * * Affiliation of a supervisory or confidential employee with another employee organization which has as its members non-supervisory employees or non-confidential employees is permitted."
In this case, the union is an "employee organization which has as its members non-supervisory employees." Since this provision permits "a" supervisory employee to be affiliated with the union, it must also permit the other supervisory employees to be affiliated with the union. This is because statutory references to the singular generally include the plural, Minn.St. 645.08(2), and because the legislature obviously intended all similarly situated supervisors to have the same rights.
The question thus becomes what the legislature intended by stating that "affiliation" between supervisory employees and "another employee organization" of nonsupervisors is permitted. We conclude that the legislature, by using the term "affiliation" and by referring to "another employee organization" of nonsupervisors, must have been referring to affiliation between supervisors' and nonsupervisors' organizations as permissible. (Italics supplied.) Any other interpretation would reduce the statutory amendment to a redundancy, since prior to the 1977 amendment supervisors already had the right to membership in employee organizations. Minn.St. 179.65, subd. 2.
Our conclusion is reinforced by examination of the other provisions of § 179.65, subd. 6. The first sentence of subd. 6 authorizes supervisory employee organizations. The second sentence requires employers to recognize supervisory employee organizations. And the third sentence of subd. 6 states that "units" of supervisory employees may not participate in joint negotiations with "units" of nonsupervisory employees. Thus, these provisions strongly suggest that the "affiliation" by supervisory employees with "another employee organization" of nonsupervisors, which is permitted by the fourth sentence of subd. 6, is organizational affiliation.
Finally, we note that the union has stated its intention that the supervisory employees comprise a local separate from the local representing nonsupervisory employees and that the supervisors' local elect its own officers and conduct its negotiations and bargaining agreement administration completely separate from the nonsupervisory employees' local. The need for establishing *169 two separate locals with separate officers is implicit in the statute's requirement that units of supervisory employees not participate in any joint negotiation involving units of nonsupervisory employees.
Accordingly, the district court's judgment is reversed and remanded with instructions to enter judgment for the union directing that the county commence bargaining with the local of the union representing the welfare department's supervisory employees.
Reversed.
NOTES
[1] The potential conflicts of interest to which the district court adverted appear to be twofold. The first is between the union's duty to supervisory employees and its duty to nonsupervisory employees. The two groups are not similarly situated and what is in the best interest of one group may not be in the best interest of the other. As discussed in this opinion, the 1977 amendment to Minn.St. 179.65, subd. 6, attempts to avoid this conflict by prohibiting joint negotiations involving both supervisory and nonsupervisory employees.

The second conflict of interest, which the amendments to PELRA do not address, involves the supervisors' obligations to the employer and the supervisors' obligations to the union. The potential conflict arises because, unlike other employees, supervisors act on behalf of the employer to direct and discipline other employees. This duty to the employer could well conflict with the supervisors' duty to their union which by its rules for members and fraternal ties could impair the supervisors' ability or incentive to perform their supervisory functions. It is in part because of this basic conflict of interest that the National Labor Relations Act does not accord supervisory employees the organizational rights accorded to nonsupervisory employees.
[2] L. 1977, c. 119, § 1.
[3] In its memorandum, the district court stated: "I have no doubt that the proponents of House File No. 805 in the House Committee on Labor-Management Relations intended to amend M.S.A. 179.65 so as to allow supervisors to be represented by the same employee organization which also represents the rank and file employees. However, the actual amendment passed clearly failed to accomplish that purpose.

"In view of the fact that this bill passed by a narrow margin in each house, it would be pure speculation to find that the majority of the legislature would have passed the bill if it clearly provided for the change advocated by the defendant."
[4] The trial court addressed this difficulty stating: "Subdivision 2 was amended in 1973. It would have been desirable for sake of clarity for the legislature to also have amended Subd. 2 to specifically limit the rights of supervisory and confidential employees as they did in amending Subd. 6 by the deletion. However, Subd. 2 has general application, while Subd. 6 specifically deals with a limited number of public employees (supervisory and confidential). The fact the legislature did not so amend Subd. 2 does not convince me that its intention was to permit supervisory employees to `affiliate' with a non-supervisory group."
[5] This presumption will not apply where it appears on examination that the statutory amendment was only for the purpose of rearrangement, clarification, or to make a second statute applicable to a situation theretofore covered by another statute. Hayes-Lucas Lumber Co. v. Johnson, 172 Minn. 504, 215 N.W. 857 (1927).