## STATE v. CUDAHY PACKING COMPANY.[1]

March 5, 1915.

Nos. 19,134—(297).

**Gross earnings tax upon refrigerator cars.**

      Chapter 250, Laws of 1907, authorized the imposition of the gross-earnings tax upon the refrigerator cars of defendant operated by it over the lines of different railroads; such operation of cars consisting in directing and controlling the loads, movements, routes and destination of the cars, the railroads furnishing the motive power, and receiving the same freight rates as if the shipments were carried in like cars of the railroads, but paying defendant one cent for each mile a car is hauled.

Action in the district court for Ramsey county to recover $2,111 taxes and $621 accrued penalties upon gross earnings from the operation of freight car lines of defendant during the years 1907 to 1912, inclusive, levied by the Minnesota Tax Commission.  The case was submitted upon stipulated facts to Olin B. Lewis, J., who made findings and ordered judgment in favor of the state.  From the judgment entered pursuant to the order for judgment, defendant appealed.  Affirmed.

*Frank B. Kellogg, C. A. Severance, Robert E. Olds, W. S. Carter* and *Thomas Creigh,* for appellant.

*Lyndon A. Smith,* Attorney General, and *William J. Stevenson,* Assistant Attorney General, for respondent.

HOLT, J.

The state seeks to enforce the collection of taxes due from the defendant as a freight line company under chapter 250, p. 339, Laws of 1907, and amendatory acts.  The taxes involved are for the years 1907 up to and including 1912.  The state prevailed and defendant appeals.

The facts are stipulated.  If defendant during the years mentioned

[1] Reported in 151 N. W. 410.

was a freight line company and subject as such to the gross-earnings tax, the judgment is right. It is not deemed necessary to make an extended statement of the contents of the stipulation. Suffice to say, that defendant was, and is, a foreign corporation duly licensed to do business in this state. It owns and operates large slaughtering and packing plants at Sioux City, Iowa, Kansas City, Missouri, and Omaha, Nebraska, and maintains a large number of selling agencies and branch houses at various points in this and other states. To carry on its business defendant found it convenient to own the refrigerator cars in which its products are transported from and to the main plants, and from these to its different selling agencies and branch houses. These cars are moved from place to place by the different railway companies according to defendant's orders or directions. Under certain restrictions the railway companies may carry the goods of other shippers in the cars on their return journey to the packing plants or distributing points. The cars are used in both intrastate and interstate shipments. Defendant pays the same freight rates as if the products were shipped in like refrigerator cars owned by the railroads; but the railroads pay defendant a rental for the use of its cars which, in the territory embracing this state, is one cent for each mile. The railroad companies in returning their gross earnings, for the purposes of taxation, deduct the rentals thus paid defendant.

Chapter 250, p. 339, Laws of 1907, is "an act to provide for the taxation of freight line companies." Such companies are defined thus by section 1: "That any person or persons, joint stock association or corporation, wherever organized or incorporated, engaged in the business of operating cars, not otherwise listed for taxation in Minnesota for the transportation of freight (whether such freight be owned by such company or any other person or company), over any railway line or lines, in whole or in part, within this state, such line or lines not being owned, leased or operated by such company, whether such cars be termed box, flat, coal, ore, tank, stock, gondola, furniture or refrigerator car, or by some other name, shall be deemed a freight line company." The other sections of the chapter relate to the imposition and enforcement of a tax upon the gross

earnings of such line in lieu of the tax upon its property. We think defendant comes clearly within this law. The intention to bring in the large shippers who furnish the cars for the transportation of their products is indicated not only by the clause in parenthesis, but by the careful description of the kind of cars usually owned and operated by these shippers. And were it not for the fact that when the first attempt was made to impose a tax of this nature, prior to the constitutional amendment, the law also included so-called equipment companies subsequently eliminated and not again mentioned when, thereafter, in 1907 chapter 250 was enacted defining freight line companies in the precise words of the statute defining freight line companies at the time the equipment companies were dropped out, it could hardly be even claimed that defendant was not subject to the taxation of its cars on the gross-earnings basis. But now the argument is, the history of the legislation suggests a design not to impose the gross-earnings tax upon all companies furnishing cars for railroad transportation, and that this defendant came more appropriately within the definition of an equipment company, as originally contained in the statute, than a freight line company. This argument is also sought to be fortified by the fact that in chapter 377, p. 526, Laws of 1911, a more inclusive definition was attempted by inserting the words "or engaged in the business of furnishing or leasing cars," after the words "engaged in the business of operating cars." We do not think much force should be given either argument. An equipment company as defined in the law when originally enacted of course referred to something then known to those versed in railway transportation. We think such companies are the ones described in the stipulation of facts thus: Railroad companies themselves sometimes cause separate corporations to be organized, known as "Equipment Companies, to hold the title to cars, engines and other rolling stock, and lease the same to the railroad companies respectively by which the equipment companies have been caused to be formed. The purpose of this equipment company device is to prevent the equipment involved from becoming subject to the lien of trust deeds or mortgages made by the railroad companies; but the equipment so leased is * * * handled and used in all respects by the rail-

road company as if it were its own." The defendant is not an equipment company as described in the stipulation, nor as defined in the original statute. It was never engaged in the business of furnishing or leasing cars to be used in the operation of railroads, but it furnished cars for the conduct of its own transportation business. And as to the change in the law of 1911, we know that legislators frequently make verbal changes in the law so as to forestall anticipated technical quibbles. Stress is also laid on the words, "engaged in the business of operating cars." It is evident that operating here does not refer to the physical power exerted in moving the cars upon the railroad tracks, but to the fact that the freight line company directs and controls the movement of the cars employed in the conduct of its transportation business as to kind and quantity of freight to be carried, the route and the destination. In State v. Canda Cattle Car Co. 85 Minn. 457, 89 N. W. 66, it was assumed by both court and counsel that the defendant therein was a freight line company, and that decision can aid neither party in this controversy.

Concededly the gross-earnings tax is based upon the right to tax the property out of which the earnings are derived. It is a practical method adopted to reach the property for taxing purposes. Corporations engaged in the transportation business have plants or systems combining tangible and intangible property. The business of common carriers considered as a whole, and embracing rights, franchises, equipment and property of every nature, may be taxed as such. Adams Express Co. v. Ohio State Auditor, 17 Sup. Ct. 305, 41 L. ed. 683, 165 U. S. 194. And no doubt this state may now classify for taxation purposes property devoted to transportation by shippers having so extensive shipments of their products that it is deemed necessary to have a transportation business of their own. We cannot say that it is the same property on which the railroad companies paid the full taxes. We think the state may tax upon the gross-earnings basis both the railroad companies upon its property as a whole and the freight line companies upon the cars devoted to its transportation business. This is countenanced by the decision in State v. Minnesota & International Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426. There can be no claim of attempted double

129 M.—3.

taxation in this instance, for the state obtains no more than the total gross earnings of the railroads, they having been permitted to deduct the amount the state now recovers of defendant. Of course this would be no reason to enforce the gross-earnings tax against defendant, unless the statute permits its property set apart for transportation purposes to be assessed under that method. We think the statute, as it existed from 1907 to 1911, so required.

The contention that the tax demanded is not a fair equivalent of a tax upon the cars or property itself, does not appear to have sufficient merit to require discussion; and the proposition that the tax is an unlawful burden on interstate commerce is answered by State v. United States Express Co. 114 Minn. 346, 131 N. W. 489, 37 L.R.A.(N.S.) 1127, affirmed in 223 U. S. 335, 32 Sup. Ct. 211, 56 L. ed. 459.

The judgment must be affirmed.