### STATE v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 24, 1925.

No. 24,512.

**Rental for cars used entirely outside Minnesota by railroads having no tracks in the state not part of railway's gross earnings for purposes of taxation.**

1. In the operation of railroads, cars belonging to one company frequently pass into the temporary control and use of other companies, and to adjust their rights the sanctioned practice is that the owning company is credited and the using company charged a mileage or a per diem rental. In order to determine whether such credit balance is to constitute gross earnings, for the purposes of fixing the amount of the tax of the company, all rentals derived from the use of the cars by companies operating no lines within the state must be excluded, and no more included of rentals from foreign companies extending into the state than the proportion earned from use within the state.

[1]Reported in 203 N. W. 453.

**When act is not of doubtful meaning, practical construction by state authorities not binding.**

2. Practical construction by the authorities charged with the duty of enforcing a law is not binding upon the courts or litigants, unless the law is of doubtful meaning.

1. See Taxation, 37 Cyc. p. 1039.
2. See Statutes, 36 Cyc. p. 1142; Taxation, 37 Cyc. p. 1039.

Action in the district court for Ramsey county to recover unpaid taxes. The case was tried upon stipulated facts before John B. Sanborn, J., who ordered judgment in favor of defendant. The state appealed from the judgment. Affirmed.

*Clifford L. Hilton*, Attorney General, and *G. A. Youngquist*, Assistant Attorney General, for appellant.

*M. L. Countryman, F. G. Dorety* and *Fritz & Foster*, for respondent.

HOLT, J.

The controversy relates to items of income of defendant, a railway company, claimed by the state to be a part of the gross earnings to be treated as such for taxation purposes, but not reported by defendant for the year 1922. The main item is the credit balance in favor of defendant arising out of the exchange of freight and passenger cars with other carriers, the amount of the tax claimed by the state with penalties being $38,256.40, including some other items of small amounts. The gross earnings tax reported was upon an amount which yielded the state for the year 1922, $1,943,456.17. This has been paid.

It appears that in handling freight and passenger business over the railway systems of the country, freight and passenger cars of necessity must pass out of the control of the owning carriers and be hauled by and over the lines of other carriers. Thus the owners thereof are deprived of their use for weeks and months at a time. That this enforced use may not be for the best interests of the owners of the cars is self-evident. In order to adjust somewhat their rights among themselves, the railway companies have adopted a practice, sanctioned by the Interstate Commission, by which the

owner of the car diverted to the use of some other carrier is credited and the user charged with an agreed amount per diem or per mile. The credit balance resulting to defendant of $674,613.51, is the item here sought to be reached as a part of its gross earnings. The decision in the court below was in favor of defendant.

In State v. M. & I. Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426, referring to credit balance of the sort mentioned, it was said: "Where accounts are kept between different companies and charges are adjusted for such service, up to the point where the accounts balance, the operation is a mere exchange of the use of the cars, but the amount received by any company for the use of its cars in excess of the amount paid out by it for the use of the cars of other companies is one of its sources of revenue earned by its rolling stock, and should be included in the gross earnings." That decision was rendered in 1908. Before that time the attorney general and those in charge of railroad taxation had not considered credit balances gross earnings, but thereafter reports of such income were required, and apparently became a basis for fixing the tax to which the railroads submitted until this controversy. Defendant contends that the decision is wrong in principle, makes for double taxation, and is out of harmony with State v. St. P., M. & M. Ry. Co. 30 Minn. 311, 15 N. W. 307, where it was held that the railroad, operating under the provision of a statute requiring it to pay a lieu tax of "three per cent of the gross earnings of said railroad," was not to include the rentals received from the use of trackage leased to another railroad, both roads jointly using the part leased. It is difficult to reconcile the two decisions, and we shall not attempt the task, except to note that the provision governing the tax in the St. Paul & Manitoba case read: "For the purpose of ascertaining the said earnings an accurate account shall be kept by said company of all receipts and expenditures on account of the operation of said railroads," etc., whereas in the Minnesota & International case the law applicable to the taxes there involved omits the words, "on account of the operation" of the railroad and there were no definite directions by which to determine gross earnings of the defendant therein. However, the court, whilst

calling attention to the difference in the law applicable to the two companies, went on to conclude from the fact that the legislature had enacted chapter 253, p. 375, L. 1903, prior to the decision (though to take effect subsequent to the accruing of the taxes there involved) no limitation was intended by the words "on account of the operation." Hence it was held that credit balances for use of equipment should be considered a part of the gross earnings of a railroad company.

After the decision and subsequent constitutional amendments the statute relating to gross earnings has been amended so it now reads: "Every railroad company owning or operating any line of railroad situated within or partly within this state, shall, during the year 1913 and annually thereafter, pay into the treasury of the state, in lieu of all taxes, upon all property within this state owned or operated for railway purposes, by such company, including equipment, appurtenances, appendages and franchises thereof, a sum of money equal to five per cent of the gross earnings derived from the operation of such line of railway within this state." (G. S. 1923, § 2246). The next section defines gross earnings as follows: "The term 'gross earnings derived from the operation of such line of railway within this state,' as used in section 1 of this act (section 2246), is hereby declared and shall be construed to mean, all earnings on business beginning and ending within the state, and a proportion, based upon the proportion of the mileage within the state to the entire mileage over which such business is done, of earnings on all interstate business passing through, into or out of the state." (G. S. 1923, § 2247).

It is quite plain that the gross earnings tax is a lieu or commutation tax upon all of the railroad company's property devoted to railroad uses within the state, including the cars here in question, for said section 2246 so states. And going to the next section to ascertain what may be figured in as gross earnings it is equally clear that the same are limited to the revenue derived by the railroad from business within the state. That this means from transportation business is made certain by the use of the language "beginning and ending" within the state. Grant that cars used by

other carriers under the practice stated produce a revenue to the owner, and that they are used in traffic, the income therefrom must, nevertheless, under the plain reading of the statute, be measured by the rent from the cars doing business or operating within the state in transportation uses. So that the situs of the cars for taxation purposes is wholly immaterial, and New York Cent. R. Co. v. Miller, 202 U. S. 584, 26 Sup. Ct. 714, 50 L. ed. 1155, and like cases have no application.

But the state contends the conclusion above stated is out of harmony with the holding in State v. M. & I. Ry. Co. supra, that such credit balances are gross earnings. It may be difficult to find a logical basis for taking only the credit balance on rental of cars and not the entire receipts. The credit balance as figured in that decision is really the net and not the gross earnings from that item. But, be that as it may, the question now presented was neither raised nor decided in that case. The question now is, can the rental for cars used entirely outside the state by railroads not extending into the state be considered as part of defendant's gross earnings? The stipulation of facts here shows that, if the rentals received from cars used upon railroads not touching this state are eliminated, there is no credit balance in favor of defendant, but the reverse. A defendant in a tax proceeding has the burden of proving that the tax sought or some part thereof is not authorized or is illegal. There was no showing in the Minnesota & International case that any item from which the credit balance was made up came from earnings of cars used by other carriers outside of the state. No doubt in defining gross earnings the legislature had in mind to avoid double taxation and any attempt to tax interstate commerce. The former may be done, but its injustice is so apparent that the courts will not lightly impute such intention to a legislature. The latter may not be done. Compare the statute involved in Meyer v. Wells, Fargo & Co. 223 U. S. 298, 32 Sup. Ct. 218, 56 L. ed. 445, and U. S. Exp. Co. v. Minnesota, 223 U. S. 335, 32 Sup. Ct. 211, 56 L. ed. 459.

The state insists that the sweeping statement in the Minnesota & International Railway Company's case, supra, is controlling here,

viz: "We believe it to have been the purpose of the legislature to require railroad companies to pay into the state treasury the stated percentage of the amount of earnings received in connection with all operations reasonably within the powers conferred upon them by the corporate acts. Such companies are organized and conducted primarily for transportation purposes, but they receive a considerable income from other sources incidental to the transportation business, though not directly from the operation of trains. We believe the proper meaning of the act under consideration to be that, when a railroad company is engaged in work reasonably within its charter powers, the receipts from such sources constitute gross earnings in the operation of the railroad." We think those utterances should be considered as made in view of the statute applicable to that railroad which had no mileage outside the state and where no defense was made that the factors from which the credit balance there involved was made up included car rentals from carriers using such cars in transportation entirely outside this state. Had we no statute prescribing how gross earnings are to be ascertained for taxation purposes, a not unfair guide might be found in the language just quoted, and which was applied in the cases therein cited, viz: Detroit, G. R. & W. R. Co. v. Commissioner, 119 Mich. 132, 77 N. W. 631; People v. Roberts, 32 App. Div. 113, 52 N. Y. Supp. 859; State v. McFetridge, 64 Wis. 130, 24 N. W. 140.

None of those cases, however, involved statutes such as here control. Section 2247, above quoted, gives so explicit direction for ascertaining gross earnings that there is no room for construction. It limits such earnings to the business done within the state. Plainly it does so with respect to all business involving gross income. If interstate business is involved, only that earned from the transportation within the state may be included. It should certainly follow that, where cars are used in traffic whether by defendant or other carriers outside the state, their earnings or rentals are excluded from the gross earnings to be taken as a basis for computing the railroad tax in this state. The learned trial court, speaking of the rental and use of cars by companies other than the owner, uses this apt language: "The car is used not by the owning rail-

road, but by the using railroad. It produces its revenue as a result of its use. If it is upon a foreign line, such revenue cannot be taken into consideration so far as fixing the Minnesota tax is concerned.

If it is upon an interstate road, only so much of the rental as is properly applicable to Minnesota may be considered." In other words, the statute directs, if car rentals are to be considered gross earnings, that the cars must have been used in operations within the state or upon railways running into the state so that the use within the state may be found by apportionment. This avoids the stigma of double taxation and avoids any appearance at attempts to tax interstate commerce.

We may take notice of the tendency to tax railroad and common carrier property by the gross earnings' method. Therefore, the revenue produced by the use of defendant's cars by other carriers outside the state, as a rule, goes into the gross earnings of such carriers and furnished the measure for their tax in the jurisdiction where taxable. American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 19 Sup. Ct. 599, 43 L. ed. 899. There is virtue in having a uniform method of ascertaining gross earnings for taxation purposes. And the one above stated, of limiting the same to the income from operations of business within the state, seems to apply to telephone companies (State v. N. W. Tel. Exch. Co. 107 Minn. 390, 120 N. W. 534); also to freight line companies under substantially the same definition of gross earnings (section 2273, G. S. 1923), as in section 2247 (State v. Cudahy Packing Co. 129 Minn. 30, 151 N. W. 410, affirmed in 246 U. S. 450, 38 Sup. Ct. 373, 62 L. ed. 827).

The state also urges that there has been such practical construction by the taxing authorities, acquiesced in by the railroads since the decision in Minnesota & International Railway Company case was rendered, that credit balances for car rental constitute gross income, so that no attack can now be made thereon, citing In re Estate of Boutin, 149 Minn. 148, 182 N. W. 990. But that rule can be invoked only where a statute is of doubtful meaning. State v. Church of the Incarnation, 158 Minn. 48, 196 N. W. 802; United States v. Graham, 110 U. S. 219, 3 Sup. Ct. 582, 28 L. ed.

126. We think the meaning of section 2247, above quoted, not doubtful.

Included in the tax claimed are some small items for actual cost of service performed for others. These are disposed of adversely to the state under the decisions of State v. M. & I. Ry. Co. supra, and State v. N. P. Ry. Co. 130 Minn. 377, 153 N. W. 850, and require no discussion.

The judgment is affirmed.