## ALMER RAILWAY EQUIPMENT COMPANY AND OTHERS v. COMMISSIONER OF TAXATION.[1]

July 10, 1942.

No. 33,157.

[1]Reported in 5 N. W. (2d) 637.

*Thomas W. Walsh, Kay Todd,* and *Leon S. Hirsh,* for relators.

*J. A. A. Burnquist,* Attorney General, *P. F. Sherman,* Assistant Attorney General, for respondent.

HOLT, JUSTICE.

*Certiorari* to review a decision of the board of tax appeals affirming a decision of respondent.

On August 15, 1939, relators, 23 nonresident corporations, filed with the commissioner of taxation a Protest and Notice of Desire for Hearing, requesting a return of the money collected from them for the period from January 1 to July 1, 1939, under Mason St. 1927, §§ 2270 to 2276-1, as amended. The hearing was granted, but the relief asked was denied. Relators appealed to the board of tax appeals. The board took testimony, heard arguments, made and filed detailed and extensive findings affirming the commissioner. The findings and memorandum (opinion) cover 40 pages of the printed record.

The first contention is that the statutes referred to are unconstitutional, in that they impose a gross earnings tax without having been approved and ratified as required by Minn. Const. art. 4, § 32(a). It is conceded by the state that the change of the gross earnings tax rate from six to seven per cent for freight line companies (the class wherein relators are placed by §§ 2270 to 2276-1 of our code) has not been adopted nor ratified by a majority vote of the electors. The gross earnings tax as therein defined made its first appearance in L. 1907, c. 250; but L. 1911, c. 377, became a substitute for c. 250. L. 1919, c. 506, was enacted as a substitute for L. 1911, c. 377, and expressly repealed the latter; the tax was continued as a gross earnings tax at the same rate as before. By Ex. Sess. L. 1937, c. 9, § 1, Mason St. 1927, § 2272, was amend-

ed, changing the rate from six per cent to seven per cent of the gross earnings. Up to this time it has not occurred to any taxpayer, under the various statutes above mentioned, to raise the objection that § 32(a) of art. 4 was applicable. Relators do not own or operate railroads of any sort. Section 32(a) of art. 4 is limited to railroads. It reads:

"Any law providing for the repeal or amendment of any law or laws heretofore or hereafter enacted, which provides that any railroad company now existing in this state or operating its road therein, or which may be hereafter organized, shall in lieu of all other taxes and assessments upon their real estate, roads, rolling stock, and other personal property, at and during the time and periods therein specified, pay into the treasury of this state a certain percentage therein mentioned of the gross earnings of such railroad companies now existing or hereafter organized, shall before the same shall take effect or be in force, be submitted to a vote of the people of the state, and be adopted and ratified by a majority of the electors of the state voting at the election at which the same shall be submitted to them."

It is perfectly clear that this constitutional provision does not apply to any one of relators or to the freight cars furnished or leased by any one of them to railroads.

It is true that the gross earnings tax, under Mason St. 1927, § 2246, on the property of railroads used in transportation as common carriers of passengers and freight, is a lieu tax, the same as the gross earnings tax under § 2272 upon the property of relators. Common carrier railroads do not pay a gross earnings tax upon all of their real estate or personal property. Only that used in or for transportation purposes is subject to that tax; other property owned by such railroads for investment or other purposes is subject to and pays the *ad valorem* tax. State v. G. N. Ry. Co. 139 Minn. 469, 167 N. W. 297; State v. N. P. Ry. Co. 139 Minn. 473, 167 N. W. 294, fully cover the subject.

The next contention is that the gross earnings tax under said §§ 2270 to 2276-1 violates Minn. Const. art. 9, § 1, and U. S. Const. Amend. XIV, in that it is not uniform upon property of the same class.

. Before considering the contention mentioned, some of the factual situation disclosed by the findings should be stated. Long ago corporations encroached upon or came to the aid of common carrier railroads by furnishing sleeping cars, as, for instance, the Pullman Company. Then came the great packing industries and fruit shippers, furnishing their own refrigerator cars, and the large oil industries, furnishing their own tank cars. The railroads, either for lack of funds or due to the depression following the expansion after the World War, were unable or unwilling to procure the cars needed to move the freight offered by shippers. Relators organized for the purpose of providing the railroads and shippers with the needed cars. Since the bulk of the freight moved on railway lines is interstate commerce, the rates of compensation for the use of cars so furnished and operated came under the control of the interstate commerce commission; and our railroad and warehouse commission cannot establish a tariff for intrastate use different from that approved by the interstate commission. So far as concerns relators, the established rates which they receive vary from one and one-half cent a mile for a loaded car haul to two and one-half cents, depending upon the classification of the car. Where the freight is oil in tank cars, the cars return empty, and no charge is made by the railroads for the return.

Relators' expert undertook to develop the differences and variations in cost and values of the different types of cars furnished by them. He was not only an attorney, but also an officer and principal stockholder of one of relators and the taxation adviser of all. He introduced exhibit 6, prepared under his direction, showing the cost of the various types of cars, new and old, the earnings or paid mile haul of the cars of each relator, the price at which they could be purchased or built, and so forth. Of the same type, the rent or earnings of an old car fit for the use fur-

nished was, of course, the same as that of a new car of the same capacity or load. It appeared that glass-lined tank cars for transportation of milk to centers like New York City or Chicago cost new up to $3,500, oil tank cars new cost from $1,600 to $1,900 of one class, and $1,150 of another, whereas serviceable old oil tank cars could be bought and fixed up for $700 or less. It would cost about $3,900 to build a poultry car, and a refrigerator car would cost about $3,200. And the argument goes that, the tax being a lieu tax, it is impossible to have uniformity under a percentage basis upon the gross earnings. Hence, §§ 2270 to 2276-1 contravene Minn. Const. art. 9, § 1, and are unequal, discriminatory, and violative of the due process clause of U. S. Const. Amend. XIV.

So far as § 1 of art. 9 applies to §§ 2270 to 2276-1, we consider it settled that the statute does not contravene this section of our constitution. It was so held in State v. Cudahy Packing Co. 129 Minn. 30, 151 N. W. 410. That case was decided after the constitutional amendment of 1906, which left art. 9, § 1, as it reads now and eliminated from art. 9, §§ 2, 3, 4, and 17. The statute in force when that decision was rendered was L. 1911, c. 377, as above stated. By Ex. Sess. L. 1937, c. 9, § 1, Mason St. 1927, § 2272, was amended so as to make the tax seven per cent of the gross earnings instead of six. There can be no doubt that relators come within the definition of freight line companies furnishing or leasing cars to railroads operating over lines within this state and taxable under said §§ 2270 to 2276-1. We think art. 9, § 1, fully authorizes the imposition of a lieu tax upon relators' cars measured by a percentage of the gross earnings on railroad lines in this state as therein provided. No individual car may be located at any particular taxing district on May 1 in this state, yet there may be many in moving trains over the various railroad lines within the state every day in the year. Relators are engaged in the business of furnishing and leasing freight cars for the use of railroads and shippers in this state. They are in that business solely for the earnings derived therefrom. The taxable value of the property may well be measured

by the gross earnings thereof. It is a well recognized method of taxation. It is applied to railroads, to telegraph and telephone companies, to express companies, to sleeping car companies, and others. Freight cars are not built, used, or let as objects of art for their worth as such, but for the pecuniary profit resulting from their use. So there are good reasons for not placing a taxable value on each individual car of relators, even were it possible. The tax is laid on the business and property used therein as a unit, and as such it is a lieu tax. Our decisions, cited under the last contention of relators, show that this court has adhered to the Cudahy decision to the present time.

As to the gross earnings tax collected from relators under our statutes, §§ 2270 to 2276-1, being in contravention of U. S. Const. Amend. XIV, we think this is fully answered by the decision in Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 38 S. Ct. 373, 62 L. ed. 827 (affirming State v. Cudahy Packing Co. 129 Minn. 30, 151 N. W. 410). It not only determined that the tax there upheld was not a burden on interstate commerce, but also that it did not contravene either the due process clause of the Fourteenth Amendment or any other provision thereof. The decision also recognizes that a business and the property used therein may be considered as a unit for the purpose of taxation and valued by its gross earnings. It is true the rate has been increased since, but that is not significant. The value of, for instance, farm lands in 1920 to 1925 was more than twice the value since, yet the taxes thereon have generally increased. No case of the Federal Supreme Court has been called to our attention which overrules or questions the Cudahy decision. Relators cite and rely on Union Tank Line Co. v. Wright, 249 U. S. 275, 39 S. Ct. 276, 63 L. ed. 602; Louisville Gas Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. ed. 770. In the former, the method of appraisal was found to be arbitrary and to result in depriving the taxpayer of his property without due process and to unduly burden interstate commerce. In the Louisville Gas Co. case the mortgage registry tax of Kentucky was involved and held to contravene the equal protection clause

of the Fourteenth Amendment. There were strong dissents in both cases, and from the trend of the decisions of the Supreme Court of the United States since those decisions were rendered one would suppose the dissenting opinions express the law of today on the subject. There is nothing in Johnson Oil Ref. Co. v. Oklahoma, 290 U. S. 158, 54 S. Ct. 152, 78 L. ed. 238, contrary to the view expressed in the Cudahy case. There the whole fleet of oil tank cars was attempted to be taxed by a county in Oklahoma. The company paid the tax on 67 cars, a proportionate number of those employed in the state. The gross earnings tax method was not attempted to be applied by the law of that state. The court recognized that the company's tank cars, mostly moving in interstate commerce, were subject to a tax in every state wherein they passed over railroad lines, but the rate must be fixed on the basis of the proportion of cars used within each state to the proportion used elsewhere. The case of General American Tank Car Corp. v. El Dorado Terminal Co. 308 U. S. 422, 60 S. Ct. 325, 84 L. ed. 361, also cited by relators, has no bearing on the validity of our statutes under which the tax herein was collected. Neither the federal government nor any of its branches is now in position to question the right of the state to increase the rate of taxation. Federal taxes are approaching confiscatory rates.

The last proposition urged is that the classification of relators' cars for taxation under any other method than that applied to other privately owned cars of the same type is violative of the constitutional guarantees of uniformity and equality. We do not understand that the classification by the interstate commerce commission as to tariff or rental rates is attacked, but the difference between railroad-owned cars and relators' cars. They say that trains are moving over railroad lines in this state with freight in cars owned by railroads and in cars of relators furnished or let to the railroads, the same sort of freight in both. On the railroad-owned cars, the railroads pay five per cent of the tariff on the freight, while relators, in addition to what the railroads pay, must pay seven per cent on the mileage haul received from the

railroads. That this is not double taxation or even a discrimination is shown by a study of our cases. State v. U. S. Exp. Co. 114 Minn. 346, 131 N. W. 489, 37 L.R.A.(N.S.) 1127, a very exhaustive opinion, involved not only taxes which accrued while §§ 2, 3, 4, and 17 of art. 9 were part of our constitution, but also taxes accruing after § 1 of art. 9 was in its present form. Also, State v. G. N. Ry. Co. 163 Minn. 88, 203 N. W. 453; Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102; State v. Illinois Cent. R. Co. 200 Minn. 583, 274 N. W. 828, 275 N. W. 854; State v. M. & St. L. R. Co. 204 Minn. 250, 283 N. W. 244; State v. Illinois Cent. R. Co. 205 Minn. 1, 284 N. W. 360; *Id.* 205 Minn. 621, 286 N. W. 359 (affirmed, 309 U. S. 157, 60 S. Ct. 419, 84 L. ed. 870) ; State v. D. M. & N. Ry. Co. 207 Minn. 618, 292 N. W. 401; State v. Railway Exp. Agency, Inc. 210 Minn. 556, 299 N. W. 657; State v. Fawkes, 210 Minn. 587, 299 N. W. 666.

No system of taxation has been devised that will justly and equally distribute the burden either upon the persons or the property. But so far as the gross earnings tax method has been applied as a lieu tax where an *ad valorem* tax is impossible because of the use of the property, it appears to work out with reasonable uniformity and equality. As to relators, it cannot be said that the rate paid by them is appreciably more than that paid on the average upon personal property.

The decision of the board of tax appeals is affirmed.