**LOUISVILLE & NASHVILLE RAILROAD COMPANY**

v.

**Z. D. ATKINS et al.**
**Civ. No. 6962.**

United States District Court,
M. D. Tennessee,
Nashville Division.
March 12, 1975.

Tyree B. Harris, Hooker, Keeble, Dodson & Harris, Nashville, Tenn., and Philip M. Lanier, and Robert C. Moore, Louisville, Ky., for plaintiffs.

Randolph A. Ashley, Jr., Atty. Gen., Nashville, Tenn., and Eugene W. Ward, Gen. Counsel, Public Service Comm., Nashville, Tenn., for defendants.

Before MILLER, Circuit Judge, GRAY, Chief District Judge, and MORTON, District Judge.

FRANK GRAY, Jr., Chief District Judge.

In 1972, the Tennessee electorate ratified an amendment to Article II, Section 28 of the Tennessee constitution, which amendment (popularly known as Question 3) provided, *inter alia*, for the sub-classification of real property into four classes and of tangible personal property into three classes for ad valorem tax purposes. Under this amendment, real property is to be assessed as follows: "Public Utility" property at fifty-five percent (55%) of its value; "Industrial and Commercial" property at forty percent (40%) of value; and both "Residential" and "Farm" property at twenty-five percent (25%) of value. Tangible personal property is to be assessed at a fifty-five percent rate for "Public Utility" property, thirty percent for "Industrial and Commercial" property, and five percent for all other tangible personal property. By its terms, the amendment took effect on January 1, 1973, and the constitutionality, under the Tennessee constitution, of the process by which this amendment was proposed and ratified has been upheld by the Tennessee Supreme Court. Southern Railway Company v. Fowler, 497 S. W.2d 891 (Tenn.1973).

To implement the provisions of the constitutional amendment, the Tennessee General Assembly enacted Chapter 226 of the Public Acts of 1973, codified as Chapter 67, Tennessee Code Annotated, and, as part of this legislation, railroad property was placed in the "Public Utility" sub-classification. T.C.A. § 67–601. Although the instant proceeding began as an attack on the amendment to Article II, Section 28, the parties, through briefs and stipulations, have narrowed the litigation to an attack on the General Assembly's designation of railroad property as "Public Utility," rather than "Industrial and Commercial," *e. g.*, an attack on the applicable portion of T.C.A. § 67–601.[1] The gist of the plaintiff's claim is that, in placing the railroads in the "Public Utility" sub-classification instead of in "Industrial and Commercial," the Tennessee Legislature acted arbitrarily and unreasonably and, thus, in violation of the Fourteenth Amendment to the Constitution.

By amendment to its complaint dated April 3, 1974, plaintiff has named as additional defendants Alice T. Steele, Trustee of Dickson County, Tennessee, and Dickson County, Tennessee, and seeks refund of certain taxes paid to

---

1. In its "Reply Brief," the plaintiff attempted to retreat somewhat from this position, saying that it was still contending that the amendment could be held unconstitutional, as applied to railroads. This position, however, is untenable in that application to railroads is only through the statute in question, T.C.A. § 67–601, and, therefore, the scope of the principal issue is not broadened thereby.

Dickson County, which taxes were based on an assessment made under the statute under attack.

■ Before reaching the issues, however, there must first be dealt with the jurisdictional arguments interposed by the defendants, *i. e.*, that 28 U.S.C. § 1341 is a bar to this court's jurisdiction.[2] This contention is easily disposed of because the nature of this action and of the statute under attack take the case outside the purview of Section 1341. *See*: Hargrave v. McKinney, 413 F.2d 320, 325–327 (5th Cir. 1969).

It follows that this same jurisdictional objection to the action against Dickson County is likewise without merit.

■ Turning to the merits, we begin with the well established propositions that the classification of property for purposes of taxation by the states does not offend the Fourteenth Amendment and that the states may impose higher rates on some kinds of property, specifically railroads, than on others.

> "That the states may classify property for taxation; may set up different modes of assessment, valuation, and collection; may tax some kinds of property at higher rates than others; and in making all these differentiations may treat railroads and other utilities with that separateness which their distinctive characteristics and functions in society make appropriate —these are among the commonplaces of taxation and of constitutional law." Nashville C. & St. L. Railway v. Browning, 310 U.S. 362, 368, 60 S.Ct. 968, 972, 84 L.Ed.2d 1254 (1940).

The foregoing principles have been followed as recently as 1973, in the case of Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L. Ed.2d 351 (1973). It is clear, therefore, that the classification scheme embodied in the amendment to Article II, Section 28 is permissible under the Fourteenth Amendment, and that the legislative determination that railroads are public utilities and may be placed in the highest classification is not unconstitutional on its face.

The plaintiff seeks to avoid the seemingly overwhelming weight of precedent by asserting, under the authority of Nashville C. & St. L. Railway Co. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949 (1935), that the change of conditions in the railroad industry has rendered invalid the factual basis of the *Browning* decision and, therefore, Tennessee's classification of railroads in the highest category. In other words, the plaintiff would have this Court apply the principles enunciated in *Browning* and related cases, but reach a different result based on allegedly different facts. Ironically, a similar argument was also made in *Browning* in connection with the Due Process issue. Nashville C. & St. L. Railway v. Browning, *supra*, at p. 370, 60 S.Ct. 968.

In order for a change of circumstances to invalidate this enactment, however, the plaintiff must show that these circumstances render the difference in treatment by the State of Tennessee invidiously discriminatory. Lehnhausen v. Lake Shore Auto Parts Co., *supra*, 410 U.S. at p. 359, 93 S.Ct. 1001; Harper v. Virginia Board of Elections, 383 U.S. 663, at p. 666, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). In this regard, it is to be noted that the states have great leeway, where taxation is concerned, in making classifications.

> "The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guarantees of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster lo-

---

2. 28 U.S.C. § 1341 is as follows: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

cal interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value." Allied Stores of Ohio v. Bowers, 358 U.S. 522, 526–527, 79 S. Ct. 437, 440–441, 3 L.Ed.2d 480 (1959).

Viewed against this backdrop, the plaintiff's case falls far short of establishing that Tennessee's classification of railroad property as Public Utility property is "palpably arbitrary." *See:* Lehnhausen v. Lake Shore Auto Parts Co., *supra.*

At best, the plaintiff's proof, although voluminous, tends to show only that railroads, in general, are not as profitable as before and that certain benefits and powers peculiar to them, such as the right of eminent domain, are not as useful or as used as they once were. This evidence, however persuasive and appropriate it might be if presented to a legislative body, simply does not sustain the plaintiff's claim of invidious discrimination. Given the characteristics of railroads, it was of course eminently reasonable for the General Assembly to designate railroads as public utilities; and the economic condition of the railroad industry and its competition with others does not destroy such designation as being palpably arbitrary or invidiously discriminatory. It certainly cannot be said, on the basis of this record, that the designation complained of here was without basis. In essence, the plaintiff's case is one for the legislature, and its economic arguments are more appropriately addressed to that body, for to

grant the relief requested in this case would take the Court outside the narrow confines of judicial review and would, in effect, substitute its judgment for that of the Tennessee General Assembly.

Having thus found that neither the amendment to Article II, Section 28 of the Tennessee constitution nor T.C.A. § 67–601 is violative of the plaintiff's Fourteenth Amendment rights, the Court must deny all relief prayed herein.

An appropriate Order will be entered.