## GENERAL AMERICAN TRANSPORTATION CORPORATION, Appellant,

v.

## TENNESSEE STATE BOARD OF EQUALIZATION et al., Appellees.

Supreme Court of Tennessee.

April 5, 1976.

Tyree B. Harris, Nashville, for appellant.

Everett H. Falk, Asst. Atty. Gen., Nashville, for appellees; R. A. Ashley, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

HARBISON, Justice.

In this action appellant, a freight car company, challenges the classification for ad valorem tax assessment purposes of its property as "public utility property". The chancellor sustained the classification, and this appeal was taken.

The action originated as a petition for certiorari from the State Board of Equalization and also as an original action for a declaratory judgment, the tax in question apparently having been paid under protest pursuant to the provisions of T.C.A. § 67–933. In the original petition for certiorari, other questions regarding the assessment were raised, but these have been abandoned. A written stipulation of the facts pertinent to the classification issue was filed before the chancellor.

The stipulation shows that the appellant is a freight car company, owning and operating a large fleet of railroad cars of various types, including tank cars, coal cars and refrigerated units. These cars are operated for the transportation of property on railway systems running into this and other states. If Tennessee had a separate classification for tax purposes for railroad car companies, as those companies are defined in the taxing statutes of other states, there is no question but that appellant would fit such definition. See Burns Indiana Stats. Ann., § 6–1.1–8–2 (1975 Supp.); Minnesota Stats.Ann., § 295.01 (1972).

Tennessee does not separately classify and tax private car companies or sleeping car companies, but classifies, for tax purposes, the properties of these companies, together with properties of railroad companies and some twelve other types of business enterprises as "public utility property".

The specific statutory definition contained in T.C.A. § 67–601, is as follows:

"(7) 'Public utility property' is hereby defined to include all property of every kind, whether owned or leased, and used, or held for use, directly or indirectly in the operation of a public utility, which shall include but not necessarily be limited to the following business entities, whether corporate or otherwise: . . . (3) passenger, sleeping, freight and private car companies which is hereby defined as any business, other than a railroad company, which owns, uses, furnishes, leases, rents or operates to, from, through, in or across this state or any part thereof any kind of railroad car, including but not necessarily limited to, flat, tank, refrigerator, passenger, or similar type cars . . . ."

Under the provisions of T.C.A. §§ 67–901 et seq., the Tennessee Public Service Commission is directed to assess for taxation the property of business enterprises such as those described above, together with railroad companies, telephone and telegraph companies, and numerous others. T.C.A. § 67–905 requires passenger, sleeping, freight or private car companies to furnish specific data to the Commission for the purpose of making its assessments.

The Commission is required to assess all operating property of the companies listed in T.C.A. § 67–901 at fifty-five percent of its value. The statute requires that the value shall be determined by the "unit rule of appraisal where applicable."[1] T.C.A. §§ 67–922 et seq. contain formulas and other factors to be utilized by the Commission in arriving at the distributable property assessment of companies such as appellant, and the assessment is then to be apportioned to local taxing districts by methods which are not here in question.

Appellant does not contest the propriety of the assessment of its properties by the Tennessee Public Service Commission, and as the case comes here, raises no question as to the apportionment methods used. Appellant insists, however, that it is not a "public utility" as that term is usually defined, and it contends that its property should be assessed at thirty percent of value as tangible industrial and commercial personal property are generally assessed under the provisions of T.C.A. § 67–616(b).

Prior to January 1, 1973 the Tennessee Constitution required uniformity of property taxation, and all classes and categories of property were to be assessed equally. There was no provision in the state constitution for the classification of property according to use. Even under the constitutional provisions as they existed prior to 1973, however, the Public Service Commission was required to assess for taxation the distributable properties of companies such as the appellant, railroad companies, truck lines, etc.

The 1973 amendment to the Tennessee Constitution specifically authorized the classification of property according to use. This was the purpose, spirit and intent of the amendment. It expressly authorized the classification of real property into four subclassifications, and tangible personal property into three categories. The General Assembly was left with broad discretion as to the classification and assessment of intangible personal property.

Properties of companies such as appellant for many years prior to the recent constitutional amendment had been assessed according to the "unit rule" referred to in T.C.A. § 67–902. Public utility properties of all types, real, tangible and intangible, continue to be assessed under this method pursuant to the new constitutional provisions and implementing statutes, at a uniform ratio of fifty-five percent. Industrial and commercial real property is assessed at forty percent of value, while tangible commercial and industrial personalty is assessed at thirty percent of value.

As stated, the thrust of appellant's position is that it is not a "public utility" as that term is usually defined, and that the equipment here involved is leased to shippers and other companies which are not

1. T.C.A. § 67–902.

themselves utilities or engaged directly in the transportation business. The stipulation of fact shows that all cars belonging to appellant which are leased directly to railroad companies are assessed to those companies as utility property. The assessment here in question, however, involves only properties leased to private businesses, such as those engaged in the shipping of meat and other products requiring special types of equipment. Appellant insists that it is not a utility, and that to classify its property as utility property is arbitrary, unreasonable and violative of the equal protection provisions of the Fourteenth Amendment to the United States Constitution.

We are unable to accept the contention of appellant. It owns and uses its rolling stock for the specific purpose of transporting property over railroad lines, in direct competition with and for identical purposes as property owned and operated by the railroads themselves. The arguments made by appellant in this case are similar to those which have been made by the suppliers of railroad equipment for nearly a century, and these have been almost uniformly rejected by the state and federal courts.[2] In two leading cases decided in 1891, the United States Supreme Court held that the states had power to tax sleeping car companies on the basis of their ownership of property within the states, and that the tax could be apportioned within the state on a mileage basis among the counties. See *Pullman's Palace Car Co. v. Pennsylvania*, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 (1891); *Pullman's Palace Car Co. v. Hayward*, 141 U.S. 36, 11 S.Ct. 883, 35 L.Ed. 621 (1891).

While we have not made an exhaustive examination of state statutes on this subject, we find that several states classify private car companies for tax purposes with railroads and other public utilities. See Arizona Rev.Stat. § 42–136 (1975 Supp.); Colorado Rev.Stat. § 39–4–101 (1974). The taxing statutes of both of these states are similar to the Tennessee statutes here under consideration. In the recent case of *Apache County v. Atchison, Topeka & Santa Fe Ry.*, 106 Ariz. 356, 476 P.2d 657 (1970),[3] the classification of railroad properties at sixty percent of value, as against the assessment of other utility properties at forty percent of value, was sustained. Properties of "private car companies" were classified and taxed in an identical manner to railroad property under the Arizona statutes.

In other states freight car lines, sleeping car companies and other furnishers of railroad equipment constitute separate or independent classifications for purposes of taxation, as previously mentioned. See 51 Code of Ala. §§ 176–177 (1974 Supp.); So.Dak. Comp.Laws § 10–31–1 (1967); Neb.Rev. Stats. §§ 77–624 et seq. (1971). In some states, for other purposes than taxation, they are regulated under the general laws governing railroads and other utilities. See So.Dak.Comp.Laws § 49–3–3 (1967).

As recognized by this Court in the recent case of *Snow v. City of Memphis*, 527 S.W.2d 55 (Tenn.1975), the states have very broad discretion in the classification of property for the purpose of taxation. A classification must be neither capricious nor arbitrary, but must rest upon some reasonable basis. It is not required, however, to be mathematically precise or exact.

In the *Snow* case, *supra*, the Court quoted from the opinion of the United States Supreme Court in the case of *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959), as follows:

"The States have a very wide discretion in the laying of their taxes. When deal-

---

**2.** Appellants rely heavily upon the case of *Crystal Car Line v. State Tax Comm'n*, 110 Utah 426, 174 P.2d 984 (1946). In that case, however, there was an absence of a statutory definition of utilities or utility property, unlike the present case. There was no holding that the state lacked power to classify rolling stock of car companies as utility property and no

suggestion that such classification would have been improper. There was simply an absence of statutory definition or classification for the first two tax years in issue. This was supplied and upheld as to later years.

**3.** App. dismissed, 401 U.S. 1005, 91 S.Ct. 1257, 28 L.Ed.2d 542 (1971).

ing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value." 358 U.S. at 526–27, 79 S.Ct. at 440.

■ The Tennessee statutes do not attempt to assess or tax property according to ownership, but according to use. The equipment of appellant is clearly used in the transportation of property over railroad lines, and, in our opinion, there is nothing either arbitrary, illegal or unreasonable in classifying the rolling stock of freight car companies in the same category as the equipment owned by the railroads themselves. Were this not done, it would be possible for every railroad or shipper to lease its equipment from a rolling stock company, and to require the property of the latter to be assessed only as industrial or commercial property. We recognize, of course, that the Tennessee statutes now expressly provide that leased personal property used by a public utility company shall be assessed to that company. T.C.A. § 67–602(5). Further, even prior to the adoption of the present statutory provisions, and under statutes implementing the earlier constitutional provisions, this Court held that

equipment leased to public utilities was properly includable in the assessment of the lessees. *Pulaski Highway Express, Inc. v. Dunn,* 524 S.W.2d 636 (Tenn.1975).

As to properties not directly leased to railroads, it again is obvious that leasing devices or arrangements could easily be contrived so as to achieve a lower assessment ratio, if rolling stock such as that involved here were not classified and assessed in the same manner as equipment owned and operated by the railroads themselves. We are firmly of the opinion that the classification used by the Tennessee General Assembly is an appropriate one, has a reasonable and highly practical basis, and that it offends neither federal nor state constitutional provisions.

In the case of *General American Tank Car Corporation v. Day,* 270 U.S. 367, 46 S.Ct. 234, 70 L.Ed. 635 (1926), the United States Supreme Court upheld, as against a federal constitutional attack, a Louisiana tax on rolling stock of a tank car company which was four mills higher than the level of state property taxes generally. In the case of *Almer Railway Equipment Co. v. Commissioner of Taxation,* 213 Minn. 62, 5 N.W.2d 637 (1942) app. dismissed 317 U.S. 605, 63 S.Ct. 524, 87 L.Ed. 491 (1943), a gross earnings tax on freight line companies was upheld, even though the freight companies were required to pay a greater tax with reference to their rolling stock than was required of the railroad companies themselves. A similar tax on sleeping car companies had earlier been upheld in *State v. Pullman Company,* 146 Minn. 458, 179 N.W. 224 (1920) app. dismissed 257 U.S. 663, 42 S.Ct. 45, 66 L.Ed. 423 (1921).

■ We recognize that the State may not by legislative fiat convert a private corporation into a "public utility" for all purposes, as held in a number of cases cited by appellant.[4] In our opinion, Tennessee has not attempted to do this, and appellant is not

---

4. *Smith v. Cahoon,* 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264 (1931); *Frost v. Railroad Comm'n,* 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101 (1926); *Mich. Pub. Utilities Comm'n v.*

*Duke,* 266 U.S 70, 45 S.Ct. 191, 69 L.Ed. 445 (1925). None of these cases dealt with the classification of property for tax purposes.

deemed to be or classified as a "utility" for most purposes. The statutes in question deal only with the classification of property for tax purposes according to its use. The property here under consideration is placed in the same general category as that of all other companies engaged in the business of transporting persons and property by rail.

 The properties of appellants are held and furnished directly for use upon railroad lines. Some of the railroad companies operating in this state recently contended in the federal courts that their own property should not be taxed as utility property, but should only be placed in the industrial or commercial category.[5] That contention was held to be one that properly should be addressed to the legislature, not the courts. We reach the same conclusions as to the contentions of appellants.

The judgment of the chancellor is affirmed at the cost of appellants.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.

---

5. *L. & N.R.R. Co. v. Atkins*, 390 F.Supp. 576 (M.D.Tenn.1975), aff'd 423 U.S. 802, 96 S.Ct. 10, 46 L.Ed.2d 24 (1975).